1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DOVEL & LUNER, LLP**
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Grace Bennett (Cal. Bar No. 345948)
grace@dovel.com
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGER BARR, ELISA MONTES DE OCA, and GABRIELA FERNANDEZ, each individually and on behalf of all others similarly situated, <br><br> *Plaintiffs,* <br><br> v. <br><br> SELECTBLINDS LLC, <br><br> *Defendant.* | Case No. 2:22-cv-08326-SPG-PD <br><br> **Unopposed Notice of Motion and Motion for Class Certification and Preliminary Approval of Class Action Settlement** <br><br> Date: October 25, 2023 <br> Time: 1:30 p.m. <br> Dept: Courtroom 5C <br> Judge: Hon. Sherilyn Peace Garnett |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 25, 2023, at 1:30 p.m., in Courtroom 5C of the United States District Court for the Central District of California, located at 350 W. 1st Street, Los Angeles, California 90012, Plaintiffs Elisa Montes de Oca and Gabriela Fernandez will and hereby do move this Court for entry of an order:

1.    Granting preliminary approval of the proposed class action settlement set forth in the Settlement Agreement ("Agreement"), attached as Exhibit 1;

2.    Preliminarily certifying, for settlement purposes only, a settlement class in this matter that is comprised of:

All individual consumers who, during the Class Period, purchased one or more products from the SelectBlinds.com website for personal, family, or household purposes while residing in California.

3.    Preliminarily appointing Plaintiffs Elisa Montes de Oca and Gabriela Fernandez as class representatives for settlement purposes;

4.    Preliminarily appointing Dovel & Luner LLP as Class Counsel;

5.    Preliminarily finding that the terms of the Settlement are fair, reasonable and adequate, and comply with Rule 23(e) of the Federal Rules of Civil Procedure;

6.    Approving that the proposed Notice Plan complies with the requirements of Rule 23 and due process, and that the Notice is to be sent to the Settlement Class Members as set forth in the Agreement and pursuant to the deadlines in the Agreement.

This Motion is based on this Notice of Motion and Motion for Class Certification and Preliminary Approval of Class Action Settlement; the Declarations of Simon Franzini, Elisa Montes de Oca, Gabriela Fernandez, and Steven Weisbrot (on behalf of Angeion Group), filed concurrently herewith, all supporting exhibits filed herewith, all other pleadings and papers filed in this action, and any argument or evidence that may be presented at the hearing in this matter. This Motion is unopposed by Defendant, SelectBlinds LLC.

1  Dated: September 21, 2023                    By: /s/ *Simon Franzini*

2                                                     Simon Franzini (Cal. Bar No. 287631)

3                                                     simon@dovel.com
                                                      Grace Bennett (Cal. Bar No. 345948)

4                                                     grace@dovel.com
                                                      DOVEL & LUNER, LLP

5                                                     201 Santa Monica Blvd., Suite 600

6                                                     Santa Monica, California 90401
                                                      Telephone: (310) 656-7066

7                                                     Facsimile: (310) 656-7069

8                                                     *Attorneys for Plaintiffs*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Table of Contents

I.    Introduction..................................................................................................1

II.   Factual Background. ....................................................................................1

    A.    Plaintiffs' allegations............................................................................1

    B.    Settlement negotiations and mediation................................................2

    C.    The Settlement......................................................................................3

        1.    Class Definition...........................................................................3

        2.    Benefits to Settlement Class Members.......................................4

        3.    Scope of the Release....................................................................6

        4.    Incentive Awards. .......................................................................6

        5.    Attorneys' Fees and Expenses....................................................7

        6.    Notice and Administration. .........................................................7

III.  The Settlement should be preliminarily approved. ....................................8

    A.    The Court should conditionally certify the Settlement Class.........................9

        1.    The Proposed Class is sufficiently numerous.........................................9

        2.    There are questions of law and fact common to the class.................9

        3.    Plaintiffs' claims are typical to those of the Settlement Class. ..........11

        4.    Plaintiffs and proposed Class Counsel have fairly and
           adequately represented the Class's interests. .....................................11

        5.    The conditional Class meets the requirements of Rule
           23(b)(3). ...........................................................................................13

    B.    The proposed Settlement is fundamentally fair, adequate, and
      reasonable. ...........................................................................................15

        1.    The Agreement is the result of non-collusive arm's length
           negotiations...............................................................................15

        2.    The Settlement provides excellent relief to the Settlement
           Class, and falls well within the range of approval...........................17

        3.    The Settlement has no obvious deficiencies......................................21

i

4.    The Settlement Fund will be fairly distributed amongst

Settlement Class Members..................................................23

C.    The Court should approve the proposed notice plan...................................24

IV.    Conclusion. ................................................................................................25

ii

# Table of Authorities

## Cases

*Abdullah v. U.S. Sec. Assocs., Inc.*,
   731 F.3d 952 (9th Cir. 2013) ...........................................................................10

*Ahmed v. HSBC Bank USA*,
   2019 U.S. Dist. LEXIS 104401 (C.D. Cal. June 21, 2019) ...............................24

*All Consumer & Reseller Actions (In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prods. Liab. Litig.)*,
   2016 U.S. Dist. LEXIS 99071 (N.D. Cal. July 26, 2016) .................................15

*Allen v. Bedolla*,
   787 F.3d 1218 (9th Cir. 2015) .........................................................................16

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ....................................................................................9, 24

*Baker v. Seaworld Entm't, Inc.*,
   2020 U.S. Dist. LEXIS 131109 (2020 WL 4260712) (S.D. Cal. July 24, 2020).............17

*Barbosa v. Cargill Meat Sols. Corp*,
   297 F.R.D. 431 (E.D. Cal. 2013) .................................................................12, 14

*Bellinghausen v. Tractor Supply Co.*,
   306 F.R.D. 245 (N.D. Cal. 2015) .....................................................................24

*Boyd v. Bechtel Corp.*,
   485 F. Supp. 610 (N.D. Cal. 1979) ..................................................................21

*Briseño v. Henderson*,
   998 F.3d 1014 (9th Cir. 2021) .........................................................................16

*Californians for Disability Rights, Inc. v. Cal. Dep't. of Transp.*,
   249 F.R.D. 334 (N.D. Cal. 2008) .....................................................................12

*Chester v. TJX Cos.*,
   2017 U.S. Dist. LEXIS 201121 (2017 WL 6205788) (C.D. Cal. Dec. 5, 2017) 10, 13, 18, 19

*Elder v. Hilton Worldwide Holdings, Inc.*,
   2020 U.S. Dist. LEXIS 259476 (2020 WL 11762284) (N.D. Cal. Apr. 29, 2020).........19

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ................................................................. 10, 11, 13

*Hesse v. Sprint Corp.*,
   598 F.3d 581 (9th Cir. 2010) ......................................................................6

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ....................................................................22

*In re Hyundai and Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019) ......................................................................8

*In re MyFord Touch Consumer Litig.*,
   2019 U.S. Dist. LEXIS 53356 (2019 WL 1411510) (N.D. Cal. Mar. 28, 2019).............16

*In re Omnivision Technologies, Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2007).......................................................22

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ................................................................16, 23

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007).........................................................8

*In re Wireless Facilities, Inc.*,
   253 F.R.D. 607 (S.D. Cal. 2008) .................................................................9

*Jacobo v. Ross Stores, Inc.*,
   2018 U.S. Dist. LEXIS 248252 (2018 WL 11465299) (C.D. Cal. Dec. 7, 2018) ....10, 11,
   14, 17, 18, 19

*Just Film Inc. v. Buono*,
   847 F.3d 1108 (2017)..............................................................................14

*Kouri v. Fed. Express Corp.*,
   2023 U.S. Dist. LEXIS 84985 (C.D. Cal. Jan. 13, 2023)........................... 8, 9, 22

*Larsen v. Trader Joe's Co.*,

iv

2014 U.S. Dist. LEXIS 95538 (2014 WL 3404531) (N.D. Cal. July 11, 2014) ..............21

*Martinez v. Knight Transp., Inc.*,

2023 U.S. Dist. LEXIS 51757 (2023 WL 2655541) (E.D. Cal. Mar. 24, 2023) ............22

*Maxin v. RHG & Co.*,

2018 U.S. Dist. LEXIS 26795 (2018 WL 9540503) (S.D. Cal. Feb. 16, 2018)...............21

*McKnight v. Uber Techs.*,

2021 U.S. Dist. LEXIS 177957 (2021 WL 4205055) (N.D. Cal. Sep. 1, 2021).............19

*Morales v. Stevco, Inc.*,

2011 U.S. Dist. LEXIS 130604 (2011 WL 5511767) (E.D. Cal. Nov. 10, 2011)...........16

*National Rural Tele. Coop. v. DIRECTV, Inc.*,

221 F.R.D. 523 (C.D. Cal. 2004)...............................................................................17

*Navarrete v. Sprint United Mgmt. Co.*,

2021 U.S. Dist. LEXIS 40398 (2021 WL 4352903) (C.D. Cal. Mar. 2, 2021)...............21

*Perks v. ActiveHours, Inc.*,

2021 U.S. Dist. LEXIS 57272 (N.D. Cal. Mar. 25, 2021)................................... 15, 23, 24

*Rael v. Children's Place, Inc.*,

2020 U.S. Dist. LEXIS 13970 (2020 WL 434482) (S.D. Cal. Jan. 28, 2020)..... 11, 13, 20

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,

442 F.3d 741 (9th Cir. 2006) ....................................................................................21

*Rodriguez v. W. Publishing*,

563 F.3d 948 (9th Cir. 2009) ....................................................................................16

*Sanders v. LoanCare, LLC*,

2019 U.S. Dist. LEXIS 238757 (2019 WL 12340195) (C.D. Cal. Sept. 16, 2019).........22

*Satchell v. Fed. Express Corp.*,

2007 U.S. Dist. LEXIS 99066 (N.D. Cal. Apr. 13, 2007)................................................15

*SEB Inv. Mgmt. AB v. Symantec Corp.*,

335 F.R.D. 276 (N.D. Cal. 2020) ...............................................................................11

*Spann v. J.C. Penney Corp.*,

307 F.R.D. 508 (C.D. Cal. 2015)................................................... 10, 13, 14, 18, 22, 23

*Staton v. Boeing Co.*,

    327 F.3d 938 (9th Cir. 2003) .........................................................................8, 12

*Stearns v. Ticketmaster Corp.*,

    655 F.3d 1013 (9th Cir. 2011) ...........................................................................13

*Villafan v. Broadspectrum Downstream Servs.*,

    2021 U.S. Dist. LEXIS 249763 (N.D. Cal. Apr. 8, 2021).....................................9

*Wal-Mart Stores, Inc. v. Dukes*,

    564 U.S. 338 (2011) ..........................................................................................10

*Williamson v. McAfee, Inc.*,

    2017 U.S. Dist. LEXIS 15838 (N.D. Cal. Feb. 3, 2017) ....................................19

*Wolin v. Jaguar Land Rover N. Am., LLC*,

    617 F.3d 1168 (9th Cir. 2010) ...........................................................................11

*Xiufang Situ v. Leavitt*,

    240 F.R.D. 551 (N.D. Cal. 2007) ......................................................................10

**Statutes**

28 U.S.C. §§ 1712-1714.................................................................................................8

**Rules**

Fed. R. Civ. P. 23(a)(1)..................................................................................................9

Fed. R. Civ. P. 23(a)(2)..................................................................................................9

Fed. R. Civ. P. 23(a)(3)................................................................................................11

Fed. R. Civ. P. 23(a)(4)................................................................................................11

Fed. R. Civ. P. 23(b)(3).........................................................................................13, 14

Fed. R. Civ. P. 23(c)(2)(B)...........................................................................................24

Fed. R. Civ. P. 23(c)(2)(B)(v)......................................................................................14

Fed. R. Civ. P. 23(e)(2)(D)...........................................................................................23

**Treatises**

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, §11.27 (4th ed. 2002)..........9

## Memorandum of Points and Authorities

### I.    Introduction.

The Parties have reached a hard-fought class-wide resolution. The Settlement will provide approximately $10 million in value to Settlement Class Members. And as discussed below, it meets all the criteria for preliminary approval under Rule 23(e)(1) and Ninth Circuit precedent. The Parties request that the Court preliminarily approve the Settlement, approve the proposed notice, preliminarily certify the Settlement Class, appoint Class Counsel and the Class Representatives, and schedule a Fairness Hearing.

### II.    Factual Background.

#### A.    Plaintiffs' allegations.

Defendant, SelectBlinds LLC, sells custom blinds and shades through its website, SelectBlinds.com. First Amended Complaint ("Complaint" or "FAC") ¶7. Plaintiffs Elisa Montes de Oca and Gabriela Fernandez are California residents who both purchased blinds from Defendant's website for use in their homes. *Id.* ¶¶52-53. Plaintiffs allege that when they made their purchases, Defendant's website advertised that the products had specific "regular" prices, but were advertised as on sale for a limited-time at a discount. *Id.* For example, Ms. Montes de Oca bought 13 sets of Classic Roman Shades that were advertised as being on sale—30% off, plus 20% off for orders over $2,000—for a limited time. *Id.* ¶52. Similarly, Ms. Fernandez purchased six sets of 2" SelectWave Cordless Faux Wood Blinds that were advertised with at 30% off, plus another 15% off, and an additional 5% off. *Id.* ¶53. For both Plaintiffs, Defendant's website published a regular price for the products alongside the discounted price. *Id.* ¶¶52-53. Plaintiffs allege that they, like other reasonable consumers, understood Defendant's advertising to mean that "the Products had the published regular price, and that they were receiving a discount as compared to the regular price." *Id.* ¶54.

Plaintiffs allege that these advertised prices and discounts were false and misleading. They allege that the sales were fake because Defendant's products "are always advertised as on sale (at a purported discounted price) for a limited time." *Id.* ¶34. And they allege

these "discounts always offer at least 30% off the 'regular' prices off all Products." *Id.* ¶23. As a result, Plaintiffs allege, Defendant never actually sells its products at the listed regular prices, and consumers are not getting the advertised discounts. *Id.* ¶¶21-41, 46. In short, Plaintiffs allege that "[b]y listing fake regular prices and fake discounts, Defendant misleads consumers into believing that they are getting a good deal." *Id.* ¶41.

Based on these allegations, this Action was filed on October 4, 2022.[1] Plaintiffs filed a First Amended Complaint on June 16, 2023. Plaintiffs allege violations of California's False Advertising Law, Unfair Competition Law, and Consumer Legal Remedies Act, and state additional claims for breach of contract, breach of express warranty, and quasi-contract / unjust enrichment. *Id.* ¶¶77-146; Agreement §II(A).

Defendant has disputed, and continues to dispute, all material allegations of the Complaint. Agreement §§II(B), XI. Defendant expressly denies any liability or wrongdoing of any kind, and maintains that its advertising was accurate and lawful. *Id.*

## B. Settlement negotiations and mediation.

Settlement negotiations were arduous, contentious, and well-informed. Franzini Decl. ¶9; Agreement §II(C). The Parties began discussing early resolution of the case in December 2022, and agreed to a private mediation. Franzini Decl. ¶9. The Parties selected JAMS mediator Bruce Friedman and scheduled a mediation for April 19, 2023. *Id.*; Agreement §II(C). Prior to the mediation, the Parties negotiated and agreed to a stipulated protective order to facilitate the productive exchange of confidential materials before mediation. Franzini Decl. ¶9. The Parties then exchanged pertinent information regarding the allegations, and other information necessary for useful settlement discussions, including detailed sales records. Agreement §II(C). Plaintiffs' counsel performed an extensive analysis of Defendant's sales records, which were voluminous, and put together several damages models and financial analyses that it shared with Defendant. Franzini

---

[1] This action was first filed by a different consumer, Roger Barr. Mr. Barr's purchases are outside of the Class Period covered by the Settlement, and so he is not a member of the proposed Settlement Class. Mr. Barr's claims will be dismissed in accordance with a separate individual settlement between Defendant and Mr. Barr.

Decl. ¶10. This process helped the Parties to prepare and exchange substantive mediation briefs setting forth the Parties' positions on liability and damages calculations. *Id*.; Agreement §II(C).

After exchanging mediation briefs and conducting separate pre-mediation conferences with the mediator, the Parties decided to postpone the mediation to allow for more information exchange.  Franzini Decl. ¶10. The Parties rescheduled the mediation for June 20, 2023. *Id.* ¶9. Prior to the rescheduled mediation, the Parties conducted further informal discovery.  This culminated in a pre-mediation presentation about Defendant's financials and sales records to the mediator and to Plaintiffs' counsel. *Id.* ¶10.

On June 20, 2023, the Parties participated in a full-day, in-person mediation in Los Angeles before Mr. Friedman. No settlement was reached at the mediation. In the weeks that followed, the Parties continued their negotiations with the help of the mediator. Those follow-up negotiations spanned five weeks. Franzini Decl. ¶11; Agreement §II(C). These negotiations ultimately resulted in a mediator's proposal which both sides accepted on July 26, 2023. Franzini Decl. ¶12. After the mediator's proposal was accepted, the Parties negotiated a long-form agreement. *Id.* The negotiation involved several back-and-forth redline drafts, which ultimately concluded on September 12, 2023. *Id.* The Agreement is attached this Motion as Exhibit 1.

The Parties did not reach agreement on attorneys' fees, costs, and service awards to the Plaintiffs (through the mediator) until after their negotiations regarding the direct benefits to the Settlement Class (again through the mediator) were competed. *Id.* ¶11. And at no point did the Parties negotiate any clear sailing provision—as discussed below, Defendant is free to challenge the amount of proposed Class Counsel's fee request. *Id.*; Agreement §III(H)(1).

### C.    The Settlement.

#### 1.    Class Definition.

The Settlement Class consists of all individual consumers who purchased one or more products from the SelectBlinds.com website for personal, family, or household

1    purposes while residing in California, during the Class Period. Agreement §1(DD).

2               **2.    Benefits to Settlement Class Members.**

3          The Agreement requires SelectBlinds to pay approximately $10,000,000 in direct

4    benefits to the Settlement Class, notice and administration costs, incentive awards to the

5    Plaintiffs as approved by the Court, and any award of attorneys' fees, costs, and expenses

6    as approved by the Court. Agreement §§ III(E)(1), III(H)(1). Under the Agreement, the

7    Settlement Class will receive approximately $8,500,000 in direct benefits. *Id.* §III(E)(1). In

8    addition, SelectBlinds will pay $1,497,500 on top of those direct benefits to cover notice

9    and administration costs; incentive awards; and attorneys' fees and costs. *Id.* §III(H)(1).

10         <u>Cash and Credit Benefits</u>. The Agreement requires SelectBlinds to make payments

11   to each Settlement Class Member in one of two ways, at the Class Member's election. *Id.*

12   §III(E)(1). Settlement Class Members can either: (1) file a claim and receive a cash

13   payment equal to 12% of the total amount of purchases from SelectBlinds.com while a

14   California resident during the Class Period; or (2) do nothing, and automatically receive

15   the same amount (12% of the value of their total purchases) in the form of store credit

16   that does not expire and can be used on any purchase on SelectBlinds.com. *Id.* §III(E)(1-

17   4). In other words, Settlement Class Members can choose to receive payment in cash, or

18   as SelectBlinds credit, but the value will be the same no matter the form. Defendant's

19   purchase records show that the value of these benefits is approximately $8,500,000. And

20   the average amount each Class Member will receive is approximately $75 (in cash or

21   credit, depending on what they chose). *Id.* §III(E)(1); Franzini Decl. ¶14.

22         To receive their payment in cash, Settlement Class Members will fill out and submit

23   a claim form online, or, if they prefer, mail the form to the Settlement Administrator.

24   Agreement §III(F)(2). The Claim Form, which is attached as Exhibit C to the Agreement,

25   will be conveniently available on the Settlement website. *Id.*; *id.* §IV(C). Settlement Class

26   Members can choose to receive cash payments through an online service like PayPal, via a

27   pre-paid Mastercard, or in the form of a physical check delivered by the Settlement

28   Administrator. *Id.* §III(G)(3), Exhibit C (claim form explaining these payment options).

4

SelectBlinds credits will be automatically distributed to any Settlement Class Member who does not file a claim form. *Id.* §III(E)(2). To ensure that Settlement Class Members receive their credits promptly, Defendant will distribute the credits directly into users' SelectBlinds accounts. *Id.* If a Class Member does not have an active account, the Class Member will receive instructions to create an account via email, or, if the email is undeliverable, by first class mail. *Id.* Once a Class Member has created an account, the credit will be automatically deposited. *Id.* After the credit benefits have been deposited, SelectBlinds will send each Class Member an email to the email address associated with the account providing instructions on how to use it. *Id.*

Settlement credits do not expire and can be used toward any purchase on SelectBlinds' website (including any shipping and handling fees or taxes). *Id.* §III(E)(3). The credits can be combined with any other discount or offer. *Id.* Plus, if a Class Member's credit exceeds the total amount of their order, then any unused credit can be applied toward future purchases. *Id.* This ensures that each Class Member will be able to use their full benefit, whenever they want, including split across multiple transactions.

SelectBlinds will inform Class Members by email when their credit benefit is received. (This is on top of the formal notice that Class Members will receive from the Claims Administrator). *Id.* §III(E)(2). In addition, the credit will be applied automatically to the Class Member's account. This will ensure that Class Members know they received the benefit, and know how (and won't forget) to use it.

There are many items on SelectBlinds' website that cost far less than the average amount each Class Member will receive. Franzini Decl. ¶20. This means that Settlement Class Members who elect to receive credits will be able to use their credits without having to make any additional purchase. Plus, Class Members can elect to receive their benefit in cash, and the cash will be the same amount as the credit. So, no Class Member will be forced to make any purchase they don't want to receive their Settlement benefits.

<u>Settlement Costs Fund</u>. In addition to providing $8,500,000 in Cash and Credit Benefits to the Settlement Class, SelectBlinds will make available $1,497,500 to cover

notice and administration costs, incentive awards to the Plaintiffs as approved by the Court, and any award of attorneys' fees, costs, and expenses to proposed Class Counsel as approved by the Court. *Id.* §§III(E)(3), I(GG). This fund will be separate from and on top of the $8,500,000 in benefits to Settlement Class Members. *Id.* §III(E)(1). So, the benefits received by Class Members under the Settlement will not be reduced to pay for attorneys' fees or costs.

### 3. Scope of the Release.

The Agreement calls for a narrowly tailored release of only those claims that "arise from the same facts and claims alleged" in the First Amended Complaint. *Id.* §III(D). Under the Agreement, Settlement Class Members retain their rights against Defendant to bring any claims disconnected from the facts and allegations in this lawsuit. This avoids inefficient and duplicative litigation while complying with Ninth Circuit precedent requiring that released claims be based on the "identical factual predicate." *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010).

### 4. Incentive Awards.

Plaintiffs' counsel intends to request modest service awards of $2,500 for each of Ms. Montes de Oca and Ms. Fernandez, to compensate them for their service as class representatives. Agreement §III(H)(2); Montes de Oca Decl. ¶9; Fernandez Decl. ¶9; Franzini Decl. ¶17.  Plaintiffs have both spent substantial time on this action. They both consulted on the drafting of, and reviewed, the First Amended Complaint. They both gathered and provided information, and responded to requests for information, during informal discovery. They provided information to proposed Class Counsel in the lead up to mediation, made themselves available by telephone during mediation, discussed the mediation and follow-up negotiations with counsel. And they have been diligent in responding to counsel, and have stayed informed of the status of the action, including settlement. Montes de Oca Decl. ¶8; Fernandez Decl. ¶8. The incentive awards will be paid from the Settlement Costs Fund and are subject to the Court's approval. Agreement §III(H)(2). The Settlement is not contingent on the Court granting the requested awards.

Agreement §III(H)(2).

## 5. Attorneys' Fees and Expenses.

The Settlement Agreement permits Class Counsel to apply to the Court for its reasonable attorneys' fees and expenses in an amount not to exceed $1,497,500. Agreement §III(H)(1). This is less than 15% of the total settlement value (approximately $10 million). As discussed below, this is much lower than the Ninth Circuit's 25% benchmark for attorneys' fees in class actions. Moreover, Class Counsel expects to request less than the full $1,497,500 available, as those amounts must also cover notice and administration costs (estimated to be between $63,990-74,000), as well as incentive awards to the Plaintiffs ($5,000, if approved by the Court). Franzini Decl. ¶16; Agreement §III(H)(1). Proposed Class Counsel will apply for fees and costs in a separate motion.

## 6. Notice and Administration.

The Parties request that the Court appoint Angeion Group ("Angeion") as Settlement Administrator. Franzini Decl. ¶23. The Parties selected Angeion after Plaintiffs solicited bids from multiple settlement administration services. *Id.* Angeion anticipates that administration will cost between $63,990-74,000. Franzini Decl. ¶16; Weisbrot Decl. ¶30.

To effectuate the best possible notice, Defendant will provide Angeion with a Class List consisting of: (1) Class Members' most recent email addresses associated with their SelectBlinds account or purchases; (2) the California shipping address associated with each Settlement Class Member's most recent purchase to a California address; and (3) list of the purchases the Settlement Class Member made on SelectBlinds.com. Agreement §III(C). The Settlement Administrator will provide direct notice to all Settlement Class Members. *Id.* §IV(A-C); Weisbrot Decl. ¶31. Defendant has a recent email address for each Class Member, so the Parties anticipate that the vast majority of Class Members will receive notice via email. Franzini Decl. ¶25. For Class Members whose email notices returned as undeliverable, the Settlement Administrator will provide direct notice by via first class U.S. mail. Agreement §III(B); Weisbrot Decl. ¶24. In sum, the Parties anticipate that virtually all Settlement Class Members will receive direct notice. Franzini Decl. ¶25.

The Settlement Administrator will also create a Settlement Website, through which Settlement Class Members can submit a Claim Form electronically, and which will include detailed information concerning the Settlement. Agreement §III(C); Weisbrot Decl. ¶26.

Pursuant to CAFA and the Agreement, the Settlement Administrator will also serve notice in accordance with the requirements of 28 U.S.C. § 1715(b) within ten (10) days of the filing of this motion. Agreement §IV(E); Weisbrot Decl. ¶29. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) and CAFA, and the Settlement fully complies with CAFA (it does not provide for a recovery of coupons, does not result in a new loss to any Class Member, and does not provide greater relief to some Class Members on the basis of proximity to the Court). 28 U.S.C. §§ 1712-1714.

## III.  The Settlement should be preliminarily approved.

The Ninth Circuit recognizes a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019). Under Rule 23(e), approving a class action settlement "requires a two-step process—a preliminary approval followed by a later final approval." *Kouri v. Fed. Express Corp.*, 2023 U.S. Dist. LEXIS 84985 (2023 WL 3431288), at *8 (C.D. Cal. Jan. 13, 2023) (Peace Garnett, J.). In the first stage here, the Court must determine whether a Rule 23 settlement class may be conditionally certified. *See Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). And in the second, the Court considers whether a proposed settlement is "fundamentally fair, adequate, and reasonable." *Id.* at 959.

In making this second determination, courts consider whether a proposed settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). But, a "court need not ask whether the proposed settlement is ideal or the best possible; it determines only whether the settlement is fair, free of collusion, and consistent with the named

8

plaintiffs' fiduciary obligations to the class." *Villafan v. Broadspectrum Downstream Servs.*, 2021 U.S. Dist. LEXIS 249763, at *14 (N.D. Cal. Apr. 8, 2021). And, at the preliminary approval stage, "the 'settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval.'" *Kouri*, 2023 U.S. Dist. LEXIS 84985 (2023 WL 3431288), at *8 (Peace Garnett, J.) (emphasis in original).

Here, as explained below: (1) the proposed Settlement Class is cohesive and is fit for conditional approval, and (2) the Settlement is fundamentally fair, adequate, and reasonable. Thus, the Settlement warrants preliminary approval.

### A.    The Court should conditionally certify the Settlement Class.

"Parties may settle a class action before class certification and stipulate that a defined class be conditionally certified for settlement purposes." *In re Wireless Facilities, Inc.*, 253 F.R.D. 607, 610 (S.D. Cal. 2008); *see* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("Newberg"), §11.27 (4th ed. 2002). To conditionally certify a class, a court must determine that the proposed Settlement Class satisfies the requirements of Rule 23(a) and at least one of the subsections of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Here, the proposed class meets all the requirements of Rule 23, and the Court should conditionally certify the Settlement Class.

### 1.    The Proposed Class is sufficiently numerous.

Rule 23(a)(1) is satisfied when the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Although there 'is no numerical cutoff for sufficient numerosity,' generally 40 or more members will satisfy the numerosity requirement." *Kouri*, 2023 U.S. Dist. LEXIS 84985, at *9. Here, the Settlement Class consists of approximately 113,377 members. Franzini Decl. ¶15; Agreement §IV(A). This more than satisfies Fed. R. Civ. P. 23(a)(1).

### 2.    There are questions of law and fact common to the class.

Rule 23(a)(2) requires questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). "This does not, however, mean that every question of law or fact must be common to the class; all that Rule 23(a)(2) requires is a single significant question of law

1    or fact." *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013).

2        Common questions must be "capable of classwide resolution." *Wal-Mart Stores, Inc.

3    v. Dukes*, 564 U.S. 338, 359 (2011). In other words, common questions must have a

4    common answer that "will resolve an issue that is central to the validity of each one of the

5    claims in one stroke." *Id.* Thus, commonality is "easily satisf[ied]" where class members

6    "all base their claims on the same legal theory." *Xiufang Situ v. Leavitt*, 240 F.R.D. 551, 560

7    (N.D. Cal. 2007); *see Spann v. J.C. Penney Corp.*, 307 F.R.D. 508, 518 (C.D. Cal. 2015).

8        Here, Settlement Class Members' claims all stem from the same factual

9    circumstances and legal theories: all Class Members purchased purportedly discounted

10   products from SelectBlinds.com for personal, family, or household purposes, while

11   residing in California. FAC ¶¶77-146 (asserting uniform legal claims on behalf of all class

12   members); *see Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). As a result,

13   there are numerous common questions of law and fact that will generate common

14   answers for all Settlement Class Members. These include, but are not limited to: (1)

15   whether Defendant's advertising of sales and discount prices "was false or misleading

16   within the meaning of the UCL, FAL or CLRA; (2) whether defendant made false

17   statements in its advertisements; (3) whether defendant's advertisements were likely to

18   deceive a reasonable consumer; (4) whether defendant's statements regarding its pricing

19   were material to plaintiffs' purchasing decisions; (5) how to calculate prevailing market

20   price; (6) whether the regular price equaled the prevailing market price for the preceding

21   90 days in defendant's price-comparison advertising scheme," and (7) "whether plaintiffs

22   have suffered damages as a result of defendant's conduct." *Spann*, 307 F.R.D. 508, 518

23   (certifying class in fake discount case); *see Chester v. TJX Cos.*, 2017 U.S. Dist. LEXIS

24   201121 (2017 WL 6205788), at *14 (C.D. Cal. Dec. 5, 2017) (holding, in a fake discount

25   case, "there is a common question of whether Defendants' price comparison advertising

26   resulted in deceptive price comparisons that were likely to deceive a reasonable

27   consumer."); *Jacobo v. Ross Stores, Inc.*, 2018 U.S. Dist. LEXIS 248252 (2018 WL 11465299),

28   at *18 (C.D. Cal. Dec. 7, 2018) (same).

3.    **Plaintiffs' claims are typical to those of the Settlement Class.**

Rule 23(a)(3) requires the class representative's claims or defenses be "typical of the claims or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3); *see Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). And this standard is "permissive,"— claims are typical if they are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

Here, Plaintiffs' claims are typical of the Settlement Class. Both Ms. Montes de Oca and Ms. Fernandez allege that they, like all other Settlement Class Members, purchased products from Defendant's website and believed, based on Defendant's advertising, that they were receiving a discount and paying less than Defendant's regular prices. FAC ¶¶52-55. And, "[a]s with the other Members, Plaintiffs raise claims under UCL, FAL, and CLRA pertaining to [Defendant]'s pricing scheme." *Rael v. Children's Place, Inc.*, 2020 U.S. Dist. LEXIS 13970 (2020 WL 434482), at *15 (S.D. Cal. Jan. 28, 2020) (finding typicality satisfied in a fake discount case where plaintiffs made similar allegations). Plus, "like other Class Members, Plaintiffs' primary injury is the loss of income from purchases made at [Defendant's website] as a result of [Defendant]'s false discounts." *Id.*; FAC ¶54.

So, Plaintiffs' claims "arose from the same … course of conduct that gave rise to the claims of other class members, thus satisfying the typicality requirement." *SEB Inv. Mgmt. AB v. Symantec Corp.*, 335 F.R.D. 276, 284 (N.D. Cal. 2020); *see Jacobo*, 2018 U.S. Dist. LEXIS 248252, at *19 (typicality satisfied in fake discount case because the "named Plaintiffs' claims are premised on exactly the same practice as those of the absent Settlement Class Members: [Defendant]'s allegedly deceptive advertising in its U.S. stores.").

4.    **Plaintiffs and proposed Class Counsel have fairly and adequately represented the Class's interests.**

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts measure adequacy using two standards: "(1) Do the representative plaintiffs and their counsel have any conflicts of

1    interest with other class members, and (2) will the representative plaintiffs and their

2    counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327

3    F.3d 938, 957 (9th Cir. 2003). "Adequate representation is usually presumed in the

4    absence of contrary evidence." *Californians for Disability Rights, Inc. v. Cal. Dep't. of Transp.*,

5    249 F.R.D. 334, 349 (N.D. Cal. 2008).

6         Here, as explained above, Plaintiffs have the same claims as all Settlement Class

7    Members. *See* §III(A)(3). They have no separate or antagonistic interests to those of the

8    Settlement Class, and have the same interest in recovering all available damages. Montes

9    de Oca Decl. ¶7; Fernandez Decl. ¶7; *Barbosa v. Cargill Meat Sols. Corp*, 297 F.R.D. 431, 442

10   (E.D. Cal. 2013).  Plus, Ms. Montes de Oca and Ms. Fernandez have diligently assisted

11   their counsel in litigating this dispute. Montes de Oca Decl. ¶8; Fernandez Decl. ¶8;

12   Franzini Decl. ¶17. They both assisted counsel in the factual investigation necessary to file

13   the Complaint, and provided facts concerning their own purchases; reviewed the

14   Complaint and consulted with counsel on their experiences with SelectBlinds; consulted

15   with counsel in the lead up to mediation; gathered information in response informal

16   discovery requests prior to mediation; made themselves available during the mediation for

17   any questions that might arise; discussed the mediation and potential classwide resolution

18   with counsel; evaluated and agreed to the resolution; and reviewed and agreed with the

19   terms of the Agreement. Montes de Oca Decl. ¶8; Fernandez Decl. ¶8. In short, both

20   Plaintiffs took their roles seriously, and will continue vigorously pursuing relief on behalf

21   of the Settlement Class. Thus, they should be appointed class representatives.

22        Plaintiffs' counsel—Dovel & Luner LLP—has also diligently investigated and

23   litigated this case, and achieved an excellent result for the Settlement Class. Counsel has

24   significant experience litigating and settling complex cases, including class actions, and is

25   well-versed in the applicable statutes and causes of action at issue here. Franzini Decl.

26   ¶¶4-7. Plus, counsel has dedicated substantial time and resources to this case on a

27   contingency basis while facing a real risk of recovering nothing. In sum, proposed Class

28   Counsel has vigorously prosecuted this case and will continue to do so.

12

5. **The conditional Class meets the requirements of Rule 23(b)(3).**

Under Rule 23(b)(3), conditional certification is proper "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at 1022. Rule 23(b)(3) asks whether (1) "questions of law or fact common to the members of the class predominate over any questions affecting only individual members"; and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, the proposed Settlement Class meets both requirements.

<u>Common questions predominate in the Settlement Class</u>. "The predominance inquiry … asks whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Stearns v. Ticketmaster Corp.,* 655 F.3d 1013, 1019 (9th Cir. 2011). Thus, where "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022.

Here, Plaintiffs allege that—by advertising false sales, discounts, and prices that deceived consumers—SelectBlinds acted unlawfully towards all Settlement Class Members in the same way. And, this "basic common question — whether defendant's price comparison scheme generated false advertisements that deceived consumers — predominates." *Spann*, 314 F.R.D. at 322; *see Chester*, 2017 U.S. Dist. LEXIS 201121 (2017 WL 6205788), at *15 (same). Indeed, "regardless of the volume, price, timing, or location for any [Class Member's] qualifying purchase, all claims will require the Court to analyze whether Defendant's pricing scheme and pattern of discounting prices was lawful under California law." *Rael*, 2020 U.S. Dist. LEXIS 13970 (2020 WL 434482), at *18-19. Thus, "common questions predominate over individual questions." *Id.* at 18.

<u>A class action is the superior mechanism for resolution of this dispute</u>. The superiority requirement asks whether a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Class

13

1    actions are superior where the "'risks, small recovery, and relatively high costs of litigation'
2    make it unlikely that plaintiffs would individually pursue their claims." *Just Film Inc. v.*
3    *Buono*, 847 F.3d 1108, 1123 (2017).

4         Here, Defendant's products sometimes sell for as little as $20, and even Class
5    Members who purchased blinds for their entire homes, like Plaintiff Montes de Oca, are
6    unlikely to have spent more than a few thousand dollars. *See* FAC, Exhibit 2. So, were
7    Class Members to litigate their claims on an individual basis, they would quickly spend
8    more on litigating than they could hope to recover. *See Jacobo*, 2018 U.S. Dist. LEXIS
9    248252 (2018 WL 11465299), at *22 (finding a class action was superior in a fake discount
10   case).

11        Plus, importantly, "the claims of all putative class members are virtually identical."
12   *Id* at *23. So, "there is no reason that any given class member should need to pursue his or
13   her claims individually." *Id*. Without a class action, "each plaintiff would have to litigate
14   defendant's liability separately even though it could be established by common evidence
15   (*e.g.*, policies, guidelines, [Price Pacing Flow Charts], and sales data) using objective
16   standards (the reasonable consumer and prevailing market price)." *Spann*, 307 F.R.D. at
17   531-32. And, the filing of separate suits by tens of thousands of class members "would
18   create an unnecessary burden on judicial resources." *Barbosa*, 297 F.R.D. at 445. In short,
19   settling the case as a class action protects judicial resources and aids the Settlement Class,
20   while still allowing any Class Member who want to bring their own litigation to opt out.
21   *See* Fed. R. Civ. P. 23(c)(2)(B)(v); Agreement §V(B) (opt-out process).

22        As an additional matter, there is no indication here that any individual litigation
23   related to Plaintiffs' claims is currently pending in other forums, nor is there reason to
24   believe this particular forum is undesirable. Fed. R. Civ. P. 23(b)(3)(A)-(D). So, there is no
25   reason to believe that class treatment is unwarranted.

26        In short, the proposed Settlement Class satisfies the requirements of Rule 23 and
27   should be conditionally certified.

28

**B.** **The proposed Settlement is fundamentally fair, adequate, and reasonable.**

       1.       **The Agreement is the result of non-collusive arm's length negotiations.**

To determine if a settlement warrants preliminary approval, a court "first considers 'the means by which the parties arrived at settlement.'" *All Consumer & Reseller Actions*, 2016 U.S. Dist. LEXIS 99071, at *639 (N.D. Cal. July 26, 2016). "Preliminary approval is appropriate if the proposed settlement is the product of serious, informed, non-collusive negotiations." *Id.*

Here, the Parties were represented by knowledgeable, competent counsel with significant experience with complex litigation and class actions. Franzini Decl. ¶¶4-7. Counsel was well-informed in all negotiations and attended mediation only after significant analysis of the case. After scheduling a mediation, the Parties negotiated and filed a stipulated protective order to allow for the exchange of all necessary information. *Id.* ¶9. As a result, in the lead up to the mediation, counsel was able to exchange crucial and sensitive information, including financial data and sales records. *Id.* ¶10; Agreement §II(C); *see Perks v. ActiveHours, Inc.*, 2021 U.S. Dist. LEXIS 57272, at *13 (N.D. Cal. Mar. 25, 2021) ("Despite the relatively early stage of the litigation, Class Counsel obtained sufficient information to make an informed decision about the Settlement and about the legal and factual risks of the case"). Indeed, after pre-mediation discussions with the mediator, counsel delayed the mediation to allow for the exchange of further information and ensure that both Parties had all necessary information to responsibly evaluate a possible settlement. Franzini Decl. ¶9. Counsel also exchanged substantive and detailed mediation briefs addressing relevant issues. *Id.* ¶10; Agreement §II(C).

Counsel enlisted the services of an experienced mediator to guide settlement discussions. Agreement §II(C); Franzini Decl. ¶9; *Satchell v. Fed. Express Corp.*, 2007 U.S. Dist. LEXIS 99066, at *17 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). After

the June 20, 2023, full day mediation was unsuccessful, the Parties continued to negotiate through the mediator and eventually both agreed to a mediator's proposal. Agreement §II(C); Franzini Decl. ¶11; *see In re MyFord Touch Consumer Litig.,* 2019 U.S. Dist. LEXIS 53356 (2019 WL 1411510), at *25 (N.D. Cal. Mar. 28, 2019) (proposed settlement was "the product of arm's-length bargaining" where it was based on a mediator's proposal); *Morales v. Stevco, Inc.,* 2011 U.S. Dist. LEXIS 130604 (2011 WL 5511767), at *32 (E.D. Cal. Nov. 10, 2011) (settlement by means of a mediator's proposal non-collusive). In short, the Agreement was the result of non-collusive and contentious negotiations, and should be approved. *See Rodriguez v. W. Publishing,* 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.").

The Ninth Circuit has identified "red flags" that may suggest potential collusion. *Briseño v. Henderson,* 998 F.3d 1014, 1018 (9th Cir. 2021). These "'subtle signs that class counsel have allowed pursuit of their own self-interests … to infect the negotiations'" include "(1) 'when counsel receive a disproportionate distribution of the settlement'; (2) 'when the parties negotiate a 'clear sailing' arrangement' (i.e., an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed fees to the defendant." *Allen v. Bedolla,* 787 F.3d 1218, 1224 (9th Cir. 2015). None of these are present here. To the contrary, Plaintiffs' counsel will seek a fee award of less than 15% of the total Settlement value— significantly less the benchmark. *In re Online DVD-Rental Antitrust Litig.,* 779 F.3d 934, 949 (9th Cir. 2015) (establishing a 25% benchmark for fees in common fund cases). The Parties did not negotiate a clear sailing provision, and SelectBlinds is free to challenge or oppose the amount of fees requested by Class Counsel. Agreement §III(H)(1).[2] And, the Settlement is non-reversionary—under no circumstances will any funds revert back to SelectBlinds. Credit Benefits never expire, and the value of any un-cashed checks will be

---

[2] Defendant may not, however, dispute that the Agreement makes available up to $1,497,500 to pay for attorneys' fees and other settlement costs, i.e., that it must actually pay any fees and costs up to that amount if awarded by the Court. Agreement §III(H)(1).

16

sent by the Settlement Administrator to the National Consumer Law Center. *Id.* §VIII. And, any funds remaining in the Settlement Costs Fund after payment of notice and administration costs, incentive awards, and attorneys' fees and costs approved by the Court, will be distributed directly to Settlement Class Members. *Id.* §III(H)(4).[3]

> **2.     The Settlement provides excellent relief to the Settlement Class, and falls well within the range of approval.**

<u>Excellent Relief</u>. As described above, the Agreement requires that SelectBlinds pay approximately $10,000,000 in total benefits, and provide $8,500,000 in direct Cash and Credit Benefits to Settlement Class Members. Agreement §III(E)(1).

Under the Agreement, every Class Member will get 12% of their purchase price back, and the average payment will be approximately $75. Franzini Decl. ¶14. This is an outstanding recovery for Class Members, and is far more than consumers typically recover in similar cases. *See, e.g., Baker v. Seaworld Entm't, Inc.*, 2020 U.S. Dist. LEXIS 131109 (2020 WL 4260712), at *32 (S.D. Cal. July 24, 2020) (noting that a recovery amounting to "14% of the maximum amount the Class could have recovered" is "higher than 'the typical recovery in similar court-approved settlements by considerable margin'"); *Chester*, 2017 U.S. Dist. LEXIS 201121 (2017 WL 6205788), at *21 (preliminarily approving an $8,500,000 settlement in a fake discount case with an average award of approximately $37.00, assuming a 2% claims rate); *Jacobo*, 2018 U.S. Dist. LEXIS 248252 (2018 WL 11465299), at *25 (approving an $4,854,000 settlement in a fake discount case with an average award of approximately $16.70, assuming a 2% claims rate). It is also well within the range of reasonable outcomes. *See National Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) (It is "well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery.").

The relief provided by the Settlement is especially meaningful in that it provides value to each and every class member *automatically*, in the form of website credit, without

---

[3] Neither the Parties nor their counsel have any relationship to the National Consumer Law Center. Franzini Decl. ¶16.

the need for them to even make a claim. Thus, the Settlement provides for more comprehensive relief than the vast majority of similar class action settlements, which require Class Members had to file a claim to receive any relief. *See e.g.*, *Spann*, 314 F.R.D. at 317 (preliminarily approving a fake discount settlement where consumers had to file a claim form to receive a settlement benefit); *Chester*, 2017 U.S. Dist. LEXIS 201121 (2017 WL 6205788), at *21 (same); *Jacobo*, 2018 U.S. Dist. LEXIS 248252 (2018 WL 11465299), at *25 (same). And, as explained in greater detail below, it provides the option for Class Members who do not wish to receive credit to receive their settlement benefit in cash in the same amount, without any penalty for choosing to receive cash instead of credit.

For Settlement Class members who elect to receive credit, the credit does not expire, can be used in conjunction with any voucher or discount, will be applied automatically to any order on SelectBlinds.com, and will maintain a running balance that will be depleted based only on use until the balance is zero. Agreement §III(E)(1); *see Spann*, 314 F.R.D. at 317 (approving fake discount settlement where Class Members could "elect to receive cash or JCPenney store credit, which will not expire and can be used with any other promotion, discount, or coupon."). Consumers will be informed once the credits are added to their SelectBlinds' accounts, and provided with easy-to-follow instructions. *Id.* §III(E)(2). And, because numerous items on SelectBlinds' website routinely sell for less than $75—with many selling for between $20-35, or even less— Settlement Class Members will be able to redeem credits to purchase items, potentially two or more, without having to spend any additional money. Franzini Decl. ¶20 (items routinely sell for between $20-35, and more than 4,000 items sold for between $5-20 during the Class Period); *see Spann*, 314 F.R.D. at 326 (approving fake discount settlement where it was "expected to provide the average claimant with sufficient compensation to purchase at least two, if not several, items"). Plus, the credits never expire, allowing consumers to hold on to them until they're in need of new window or door coverings.

The Credit Benefits are a beneficial form of automatic relief in part because consumers are used to receiving website credits when something goes wrong in an e-

18

commerce transaction, for example when they return an item or when a company has
made a mistake with an order. Moreover, receiving credit benefits is tied to Plaintiffs'
theory of liability. Plaintiffs do not allege that there are problems with the products that
they received or that they were charged more than they agreed to pay. Instead, Plaintiffs
allege that SelectBlinds falsely advertised that the products Class Members received were
worth more than they truly were. In other words, Plaintiffs allege that they thought they
were getting blinds worth $X when instead they got blind worth a lower amount $Y.
Providing credits directly remedies this alleged deception by offering consumers exactly
what the lawsuit alleges they were deprived of—more value in the form of blinds.

In addition, the Settlement also allows consumers to elect to receive their benefit in
cash instead of credit without penalty (i.e., without decreasing the amount received). *Cf.
Jacobo*, 2018 U.S. Dist. LEXIS 248252 (2018 WL 11465299), at *16 (preliminarily
approving a settlement in a fake discount case that allowed class members to redeem
settlement vouchers for 75% of their value in cash); *Chester*, 2017 U.S. Dist. LEXIS
201121 (2017 WL 6205788), at *6 (same). So, it does not require any Settlement Class
Member to do business with SelectBlinds again to get their benefits, if they elect not to.
*See McKnight v. Uber Techs.*, 2021 U.S. Dist. LEXIS 177957 (2021 WL 4205055), at *13-14
(N.D. Cal. Sep. 1, 2021) ("[W]hen class members receive cash, as they have the option of
doing here, there is no risk of their being forced to spend 'more' of their own money at
all, much less on the defendant's product."). Plus, because the average cash payment in
this case is approximately $75, there is a significant incentive for Class Members to fill out
the easily accessible Claim Form if they prefer to get cash rather than credits. *See Elder v.
Hilton Worldwide Holdings, Inc.*, 2020 U.S. Dist. LEXIS 259476 (2020 WL 11762284), at *13
(N.D. Cal. Apr. 29, 2020) (explaining that a "$25 or $50 cash option is much more likely
to justify the transaction costs of filing a claim" than a smaller cash option).

In short, the Settlement provides real value to *every* Class Member, and is not a
coupon settlement. *See Williamson v. McAfee, Inc.*, 2017 U.S. Dist. LEXIS 15838, at *4
(N.D. Cal. Feb. 3, 2017) (settlement was "not a coupon settlement," because "class

19

members had the option to receive cash instead of value certificates, even though they received certificates by default."); *McKnight,* 2021 U.S. Dist. LEXIS 177957, at *24 n.9 (holding that settlement was not a coupon settlement because cash members could elect to receive cash rather than a voucher); *Taylor v. Shutterfly, Inc.*, 2021 U.S. Dist. LEXIS 237069 (2021 WL 5810294), at *31 (N.D. Cal. Dec. 7, 2021) (settlement was "not a coupon settlement" because the "majority of the Class [could] obtain cash instead of the promotional and shipping codes.") (cleaned up).

 <u>Risks of Continued Litigation</u>. The outcome here is particularly excellent given the risks and challenges presented by continued litigation. While Plaintiffs' counsel is very confident in the strength of the case, SelectBlinds raised multiple arguments regarding both liability and damages and whether a class could be certified.

 SelectBlinds contested its liability to Plaintiffs and Settlement Class Members. Among other arguments, it asserted that: (1) SelectBlinds' advertising and sales are not deceptive or unlawful because the website's listed prices refer to Manufacturer's Suggested Retail Prices, not former prices; (2) Plaintiffs lack standing to seek injunctive relief and their equitable claims will fail because they have adequate remedies at law; (3) Plaintiffs' breach of contract claim will fail because the Defendant did not promise specific discounts off of former prices, but rather displayed MSRPs; and (4) Plaintiffs' express warranty claim will fail because it is premised on price and perceived value. Franzini Decl. ¶19. SelectBlinds also argued that Plaintiffs would be unable to certify a class for several reasons, including that Plaintiffs could not calculate classwide damages or restitution. *Id.*; *see Rael*, 2020 U.S. Dist. LEXIS 13970 (2020 WL 434482), at *30 (preliminarily approving fake discount settlement and acknowledging risk of continued litigation where the "state of the law regarding the appropriate method for calculating damages or restitution in these types of false pricing cases is in flux."). While Plaintiffs disagree with these arguments, counsel recognizes that to succeed on their claims, Plaintiffs would have to beat a number of substantive arguments, successfully certify a class despite SelectBlinds' objections, and win at trial. And even then, there is the possibility of appeal. *See Larsen v. Trader Joe's Co.,*

1  2014 U.S. Dist. LEXIS 95538 (2014 WL 3404531), at *12 (N.D. Cal. July 11, 2014)

2  ("[S]ettlement is favored where, as here, significant procedural hurdles remain, including

3  class certification and an anticipated appeal.").

### 3.    The Settlement has no obvious deficiencies.

5  As detailed above, the Agreement provides superb relief for Settlement Class

6  Members. In addition, there are no obvious deficiencies in the Settlement.

7  <u>Proposed Class Counsel recommends this settlement</u>. "[R]epresentation by

8  competent counsel familiar with the law in the relevant area and with 'the strengths and

9  weaknesses of [the parties'] respective positions, suggests the reasonableness of the

10 settlement.'" *Navarrete v. Sprint United Mgmt. Co.*, 2021 U.S. Dist. LEXIS 40398 (2021 WL

11 4352903), at *30 (C.D. Cal. Mar. 2, 2021). "The recommendations of plaintiffs' counsel

12 should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610,

13 622 (N.D. Cal. 1979).

14 Here, proposed Class Counsel recommends the Agreement, and believes that it

15 represents an exceptional outcome for the Class. Franzini Decl. ¶¶18, 21. And proposed

16 Class Counsel has significant experience in complex litigation, including in consumer class

17 actions. *Id.* ¶¶4-7; *see Maxin v. RHG & Co.*, 2018 U.S. Dist. LEXIS 26795 (2018 WL

18 9540503), at *12 (S.D. Cal. Feb. 16, 2018). Plus, proposed Class Counsel has dedicated

19 substantial time to this litigation, including a thorough legal and factual investigation.

20 Franzini Decl. ¶¶9-11. As a result, counsel is highly qualified and well-informed. So this

21 recommendation indicates that that the Agreement is reasonable.

22 <u>The release is narrowly tailored</u>. "[A] federal court may release not only those

23 claims alleged in the complaint, but also a claim 'based on the identical factual predicate as

24 that underlying the claims in the settled class action.'" *Reyn's Pasta Bella, LLC v. Visa USA,*

25 *Inc.*, 442 F.3d 741, 748 (9th Cir. 2006). Here, the Agreement calls for a narrow release on

26 behalf of Settlement Class Members of claims which were "alleged in the operative

27 complaint, or which arise from the same facts and claims alleged in the operative

28 complaint." Agreement §III(D)(1); *see Sanders v. LoanCare, LLC*, 2019 U.S. Dist. LEXIS

21

Unopposed Motion for Class Certification and                    Case No. 2:22-cv-08326-SPG-PD
Preliminary Approval of Class Action Settlement

238757 (2019 WL 12340195), at *36 (C.D. Cal. Sept. 16, 2019) (finding releases sufficiently fair and reasonable "because they are limited to causes of action based on facts alleged in the [complaint]"). Class Members maintain all rights to sue SelectBlinds for reasons unrelated to the facts and allegations in this case (for example, because SelectBlinds' advertising misled them about the color or quality of products).

In short, because the release "does not apply to claims other than those related to the subject matter of the litigation … the release adequately balances fairness to absent class members and recovery for plaintiffs with defendant['s] business interest in ending this litigation with finality." *Spann*, 314 F.R.D. at 327-28; *see Martinez v. Knight Transp., Inc.*, 2023 U.S. Dist. LEXIS 51757 (2023 WL 2655541), at *47 (E.D. Cal. Mar. 24, 2023) (release satisfactory because "the settlement does not release unrelated claims that Class Members may have against Defendant."); *cf. Kouri*, 2023 U.S. Dist. LEXIS 84985 (2023 WL 3431288), at *17-18 (C.D. Cal. Jan. 13, 2023) (settlement improperly released claims "*relating to* the subject matter of the lawsuit") (emphasis added).

<u>The fee award the Settlement provides for is more than reasonable, and the Settlement is not contingent on a particular fee award</u>. The Agreement allows Class Counsel to seek an award of attorneys' fees and costs of up to $1,497,500—or less than 15% of the Settlement's total value. This is presumptively reasonable. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 953 (approving a fee award of 25% of the total settlement value, and noting that "[t]he district court did not err in calculating the attorneys' fees award by calculating it as a percentage of the total settlement fund, including notice and administrative costs, and litigation expenses."). This is significantly less than the 25% attorneys' fees benchmark followed in the Ninth Circuit. *See id.* at 949 (holding that "in this circuit, the benchmark percentage [for attorneys' fees] is 25%"); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reason-able fee award"). In fact, courts in this Circuit routinely award fees higher than the 25% benchmark. *See In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1047-48 (N.D. Cal. 2007) ("[N]early all common

fund awards range around 30%" and generally "the rate should be set at 30%."); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1265 (C.D. Cal. 2016) (granting fee award of 27% of the settlement amount in a fake discounts case). Moreover, proposed Class Counsel expects to seek less—approximately $1,425,000—as notice and administration costs, as well as incentive awards to the Plaintiffs will come out of the fund available to pay for fees and costs. Franzini Decl. ¶16; Agreement §III(H)(1).

The Settlement is not contingent on the Court granting counsel's request for fees. Agreement §III(H)(1). And, the Agreement does not include a "clear sailing" provision, and Defendant is free to oppose the amount of fees requested by Class Counsel. *Id.* If the Court awards less than the full amount of attorneys' fees requested, any remaining funds will be shall be divided and distributed to Settlement Class Members. *Id.* §III(H)(4). Under no circumstances will funds revert to Defendant. *Id.*

### 4.    The Settlement Fund will be fairly distributed amongst Settlement Class Members.

In determining whether to grant preliminary approval, courts consider "whether the proposal 'improperly grant[s] preferential treatment to class representatives or segments of the class.'" *Perks v. ActiveHours, Inc.*, 2021 U.S. Dist. LEXIS 57272 (2021 WL 1146038), at *18 (N.D. Cal. Mar. 25, 2021); *see* Fed. R. Civ. P. 23(e)(2)(D). Here, as explained below, the Settlement does not improperly prioritize the named Plaintiffs, and it provides equitable relief to Settlement Class Members.

First, as the Ninth Circuit has explained, service awards are justified "to compensate class representatives for work undertaken on behalf of a class," and are "fairly typical in class action cases." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 943. Here, Plaintiffs' counsel will seek only reasonable and proportionate service awards— $2,500—on behalf of Ms. Montes de Oca and Ms. Fernandez. Agreement §III(H)(2). Given both Plaintiffs' diligence and commitment to the case, discussed above, a $2,500 service award—which together represents roughly 0.05%, or one twentieth of one percent, of the Settlement's total value—is more than justified. *Ahmed v. HSBC Bank*

23

*USA*, 2019 U.S. Dist. LEXIS 104401, at *35 (C.D. Cal. June 21, 2019) (a service award "amounting to less than one percent of the settlement fund" was "warranted given the substantial efforts plaintiffs [had] undertaken on behalf of the class."). Indeed, courts routinely allow higher service awards. *See, e.g., Ahmed*, 2019 U.S. Dist. LEXIS 104401 at *34 (explaining that a $5,000 service award is "presumptively reasonable."); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015) ("Incentive awards typically range from $2,000 to $10,000."). The incentive awards will come out the Settlement Costs Fund and do not detract from Class Members' Cash or Credit Benefits. And the Settlement is not contingent on the Court approving incentive awards, and so there is no risk of a conflict of interest with absent Class Members. Agreement §III(H)(2); Montes de Oca Decl. ¶9; Fernandez Decl. ¶9; *see Ahmed*, 2019 U.S. Dist. LEXIS 104401 at *34 ("Moreover, because the parties agree that the Agreement shall remain in force regardless of any incentive award, the awards here are unlikely to create a conflict of interest between the named plaintiffs and absent class members").

In addition, the Settlement does not grant preferential treatment to any one segment of the Settlement Class. Class Members will receive different payments depending on how much they spent on SelectBlinds.com during the Class Period, but based on the same formula—12% of their past purchases. Agreement §III(E)(1). This ties Class Members' recovery to their potential damages and is an equitable means of allocating the funds. *See Perks*, 2021 U.S. Dist. LEXIS 57272 (2021 WL 1146038), at *18 (N.D. Cal. Mar. 25, 2021) ("This pro rata distribution is inherently equitable because it treats Class Members fairly based on the amount of each member's potential damages.").

In short, the Settlement treats all Settlement Class Members fairly.

**C.    The Court should approve the proposed notice plan.**

Under Rule 23(e)(1) "[t]he court must direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement. Here, the proposed notice plan is the "best notice that is practicable under the circumstances" and should be approved. Fed. R. Civ. P. 23(c)(2)(B); *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997).

24

The Parties have devised a multi-step notice plan designed to provide all necessary information to Settlement Class Members to enable them to make a well-informed decision about their participation in the Settlement. First, Defendant will provide a Class List identifying Class Members, as well as their emails and relevant addresses, to the Settlement Administrator. Agreement §III(C). Then, as discussed above, all Settlement Class Members will receive direct notice by email—or by mail, if email notice fails. *Id.* §IV(A-B); Weisbrot Decl. ¶¶ 19, 24. The notices are drafted in plain English and provide all relevant information about the case, the Settlement, and Settlement Class Members' rights. Agreement, Exhibits A, B, D. In particular, the notices provide information about the nature of the claims asserted in the lawsuit, a summary of the Settlement terms, relevant deadlines, and a statement about the release of claims. *Id.* The notices also inform Class Members about their ability to file a claim for a cash payment and their right to opt-out or object to the Settlement. *Id.*

In addition, the Settlement Administrator will establish a Settlement Website, where Class Members can review relevant documents, important dates and deadlines. Agreement §IV(C); Weisbrot Decl. ¶26. And, the Settlement Administrator will create a toll-free hotline—that runs 24 hours a day, 7 days a week—devoted to the case. *Id.* ¶28.

In light of this comprehensive plan, the Court should approve the notice plan and appoint Angeion Group as the Settlement Administrator. Angeion has significant experience administering class action settlements and anticipates that the proposed plan will provide the best notice practicable. *Id.* ¶¶ 16, 32.

## IV. Conclusion.

For the foregoing reasons, the Motion should be granted.

Dated: September 21, 2023

Respectfully submitted,

By: */s/ Simon Franzini*
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Grace Bennett (Cal. Bar No. 345948)
grace@dovel.com

25

DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiffs*

Unopposed Motion for Class Certification and          Case No. 2:22-cv-08326-SPG-PD
Preliminary Approval of Class Action Settlement