UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT BARR, ELISA MONTES DE OCA, and GABRIELA FERNANDEZ, each individually and on behalf of all others similarly situated,<br><br>　　　　　　　　Plaintiffs,<br>　　v.<br>SELECTBLINDS LLC,<br>　　　　　　　　Defendant. | Case No. 2:22-cv-08326-SPG-PD<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT [ECF NO. 42]** |

Before the Court is Plaintiffs Elisa Montes de Oca and Gabriela Fernandez (together "Plaintiffs") unopposed motion for preliminary approval of class action settlement. (ECF No. 42). Having considered the parties' submissions, the relevant law, and the record in this case, the Court finds this matter suitable for resolution without a hearing. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons set forth below, the Court hereby GRANTS Plaintiffs' Motion.

## I. BACKGROUND

### A. Plaintiff's Allegations

Plaintiffs make the following allegations in the Complaint:

Plaintiffs allege that they both purchased blinds from Defendant's website for use in their homes. (ECF No. 31 ("FAC") ¶¶ 52–53). At the time they made these purchases, Defendant's website advertised that the products were on sale for a limited-time at a discount. (*Id.*). In this advertising, the website stated a "regular" price alongside the "sale" price. (*Id.*). For example, Plaintiff de Oca alleges that she bought 13 sets of Classic Roman Shades that were advertised as being 30% off, plus 20% off for orders over $2,000. (*Id.* ¶ 52.). This sale was listed as "limited-time." (*Id.*). Similarly, Plaintiff Fernandez purchased six sets of 2-inch SelectWave Cordless Faux Wood Blinds that were advertised with an initial 30% off, as well as an additional 15% and 5% off, totaling to 50% off. (*Id.* ¶ 53). Plaintiffs allege that they, along with other reasonable customers, understood this advertising to mean that the Products cost the published regular price, such that they were receiving a special discount. (*Id.* ¶ 54).

However, Plaintiffs then learned that these prices and discounts were false and misleading. (*Id.* ¶ 34). They allege that the prices were false because Defendant's products are always advertised as on sale and therefore the "regular" prices are never charged and are therefore not accurate. (*Id.* ¶ 23). Therefore, Plaintiffs claim that, "[b]y listing fake regular prices and fake discounts, Defendant misleads consumers into believing that they are getting a good deal." (*Id.* ¶ 41).

### B. The Settlement Agreement

#### 1. Class Definition

The Settlement Agreements defines the putative class as "all individual consumers who purchased one or more products from the SelectBlinds.com website for personal, family, or household purposes while residing in California, during the Class Period." (ECF No. 42-1 ("Settlement Agreement") § I(DD)). The Settlement Agreement defines the "Class Period" as "October 4, 2019, through December 31, 2022." (*Id.* § I(I)).

### 2. Requested Relief

The Settlement Agreement directs Defendant to pay approximately $10,000,000.00 total, inclusive of benefits, to the Settlement Class; notice and administrative costs; incentive awards to the named Plaintiffs if approved by the Court; and any award of attorneys' fees, costs, and expenses approved by the Court. (Settlement Agreement §§ III(E)(1), III(H)(1)). Of that total amount, approximately $8,500,000.00 will be paid to the class members as direct benefits. (*Id.* § III(E)). Class members will receive their portion of the benefits in one of two ways. (*Id.*). If a class member chooses to file a claim, they will receive a cash payment equal to 12% of the total amount of purchases from SelectBlinds.com while they were a California resident during the Class Period. (*Id.*). Alternatively, if the class member chooses not to file a claim, they will automatically receive the 12% of total qualifying purchases in the form of store credit that will not expire. (*Id.* § III(E)(1)-(4)). On average, each Class Member will receive approximately $75 in cash or credit, though the number will vary depending on the total value of their earlier purchases. (ECF No. 42-2 ("Franzini Decl.") ¶ 14). The remaining $1,497,500.00 will be paid by Defendant to cover notice and administrative costs, incentive awards, and attorneys' fees and costs. (Settlement Agreement § III(H)(1)).

### 3. Attorneys' Fees and Costs

The Settlement Agreement provides the putative class will be represented by Dovel & Luner, LLP ("Class Counsel"). (Settlement Agreement § I(H)). The Settlement Agreement allows Class Counsel to apply to the Court for reasonable attorneys' fees and expenses not to exceed $1,497,500. (Settlement Agreement § III(H)(1)). This amounts to less than 15% of the total settlement value, however, it amounts to the full portion of the settlement allotted for fees, costs, and notice and administrative costs. Class counsel represents, based on this, that they will seek less than the full $1,497,500. (Franzini Decl. ¶ 16). They also represent that they will apply for fees in a separate motion. (Mot. at 16).

### 4. Release of Claims

The Settlement Agreement requires class members to release the following claims:

> "all claims, demands, actions, and causes of action of any kind or nature whatsoever, whether at law or equity, arising under federal, state, or local law, that Plaintiffs or Settlement Class Members ever had, now have, or may have . . . on the basis of or arising from the Discharged Parties' representations, advertising, marketing and/or sales on the Defendant's website, www.SelectBlinds.com, during the Class Period, which were alleged in the operative complaint, or which arise from the same facts and claims alleged in the operative complaint in the Action."

(Settlement Agreement § III(D)). The released claims also include "all claims that have or could have been asserted by any or on behalf of any Settlement Class Member in this Action and that are based on or arise out of the same factual predicate as this Action." (*Id.*).

### C. Procedural History

This action was first filed on October 4, 2022. (ECF No. 1) ("Compl."). Plaintiffs filed the operative First Amended Complaint on June 16, 2023. (FAC). Defendant filed an Answer to the FAC on June 30, 2023. (ECF No. 34). While the parties first began discussing settlement in December 2022, the parties ultimately filed their notice of settlement with the Court on July 28, 2023. (ECF No. 41). The instant unopposed Motion for Preliminary Approval of Class Settlement followed. (ECF No. 42 ("Mot.")); (ECF No. 45 ("Notice of Non-Opposition")).

## II. LEGAL STANDARD

Parties seeking class certification for settlement purposes must satisfy the requirements of Federal Rule of Civil Procedure 23. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In considering such a request, the court must give the Rule 23 certification factors "undiluted, even heightened, attention in the settlement context." *Id*. Once a class is certified, Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100

(9th Cir. 2008). Accordingly, before approving a class action settlement under Rule 23, a district court must conclude that the settlement is "fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). In the Ninth Circuit there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (quoting *In re Syncor*, 516 F.3d at 1101).

Court approval of a class action settlement requires a two-step process—a preliminary approval followed by a later final approval. *See Tijero v. Aaron Bros., Inc.*, No. C 10–01089 SBA, 2013 WL 60464, *6 (N.D. Cal. Jan. 2, 2013) ("The decision of whether to approve a proposed class action settlement entails a two-step process."); *West v. Circle K Stores, Inc.*, No. CIV. S-04-0438 WBS GGH, 2006 WL 1652598, *2 (E.D. Cal. June 13, 2006) ("[A]pproval of a class action settlement takes place in two stages."). At the preliminary approval stage, the court "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." Fed. R. Civ. P. 23(e). However, the "settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (emphasis in original).

### III. CONDITIONAL CLASS CERTIFICATION

The parties seek conditional certification of the settlement class pursuant to Rule 23. For the reasons stated below, the Court finds that all of Rule 23's factors have been satisfied and thereby conditionally certifies Plaintiff's proposed class for purposes of settlement.

#### A. Numerosity

A class satisfies the prerequisite of numerosity if it is so large that joinder of all class members is impracticable. *Hanlon*, 150 F.3d at 1019. To be impracticable, joinder must be difficult or inconvenient, but need not be impossible. *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 522 (C.D. Cal. 2012). Although there "is no numerical cutoff for sufficient numerosity," generally 40 or more members will satisfy the numerosity requirement. *Woodard v. Labrada*, No. EDCV 16-00189 JGB (SPx), 2019 WL 4509301, at *4 (C.D.

Cal. Apr. 23, 2019). Here, Plaintiff estimates the number of class members is approximately 113,377. (Mot. at 18); (Franzini Decl. ¶ 15). As such, numerosity is satisfied.

### B. Commonality

Plaintiff's claims meet the commonality requirement when they "depend upon a common contention . . . capable of classwide resolution—which means that a determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "So long as there is even a single common question, a would-be class can satisfy the commonality requirement of Rule 23(a)(2)." *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (internal quotation marks omitted). Thus, where the circumstances of class members "vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Id.* (internal quotation marks omitted).

This case presents sufficiently common issues of law and fact. All Class Members' claims stem from similar factual circumstances and legal theories, specifically that they bought products, believing they were obtaining a good deal, on Defendant's website for personal, household, or family purposes while residing in California. (FAC ¶¶ 77–146). These similar factual circumstances create common questions of law to include whether Defendant's advertising regarding prices on its website was false or misleading under the UCL, FAL, or CLRA, whether the statements qualified as false, and whether they were likely to mislead the reasonable consumer. *See Spann v. J.C. Penney Corp.*, 307 F.R.D. 508, 518 (C.D. Cal. 2015) (finding sufficient commonality in consumer class action based on false advertising involving false pricing statements). Therefore, the court finds commonality met for purposes of conditional certification here.

### C. Typicality

Rule 23(a)(3) requires that the claims or defenses of the class representatives be typical of the claims or defenses of the class they seek to represent. Fed. R. Civ. P. 23(a)(3). The purpose of the typicality requirement is to "ensure[] that the interest of the class

representative 'aligns with the interests of the class.'" *Just Film, Inc. v. Bruono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiff, and whether other class members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting *Hanon*, 976 F.2d at 508).  "A court should not certify a class if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'" *Just Film*, 847 F.3d at 1116 (quoting *Hanon*, 976 F.2d at 508).

Here, Plaintiffs' claims are typical of the class because they both ordered blinds from Defendant's website during the Class Period for residential or personal use while residing in California.  Furthermore, they allege that they did so due to a belief that they were receiving a good deal.  The Complaint does not allege that they suffered any kind of individual, or different injury.  Instead, it alleges at a high level that Plaintiffs, like the rest of the class, were misled by advertising regarding discounts on Defendants' website.  Thus, Plaintiffs satisfies the typicality requirement.

### D.   Adequacy of Representation

Rule 23(a)(4) requires the Court to determine if the proposed class representatives and proposed class counsel will fairly and adequately protect the interests of the entire class. Fed. R. Civ. P. 23(a)(4).  Class representatives are adequate if they have no conflicts of interest with the potential class and will prosecute the action vigorously on behalf of the class.  *Hanlon*, 150 F.3d at 1020.

Here, Plaintiffs seek the same relief as members of the proposed class and have no apparent conflicts of interest with the putative class members.  *See* (Mot. at 21-22).  In addition, Class Counsel represents that they have extensive experience litigating and settling complex class actions. (Mot. at 21; Franzini Decl. ¶¶ 4-7).  Accordingly, Plaintiffs has satisfied the adequacy of representation requirement.

### E. Rule 23(b)(1)

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem*, 521 U.S. at 614. Plaintiff seeks to certify its proposed class under Rule 23(b)(3). (Mot. at 22). Rule 23(b)(3) provides for certification of a class where: "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The rule also provides that certain factors are relevant in making this determination: "(A) the class members' interests in individually controlling the prosecution of defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)-(D).

Here, Plaintiffs' "basic common question – whether defendant's price comparison scheme generated false advertisements that deceived consumers – predominates." *Spann*, 314 F.R.D. at 322. The individual questions that are likely to arise between each Plaintiff will have to do with what exactly they bought and calculation of their damages, whereas the common questions regarding whether the overarching alleged practice was unlawful, are shared between all Class Members. Therefore, it appears that common questions do predominate over individual questions in this proposed class. Furthermore, the nature of the damages and types of claims here support the superiority of a class action over individual litigation. Specifically, the claims themselves, as already highlighted are highly similar, but involve relatively small damage amounts when examined individually. Additionally, there would be a lack of judicial efficiency because common evidence would have to be discovered in each individual action were they to proceed outside of a class. Therefore, Plaintiffs have adequately satisfied Rule 23(b)(3) for purposes of conditional certification.

Thus, based on the foregoing, the Court conditionally certifies the class for purposes of settlement under Rule 23(b)(3). Similarly, the Court finds that Plaintiffs' counsel has thus far demonstrated their ability to handle this matter competently as class counsel and appoints them as such. Finally, as described above, the Court finds Plaintiffs adequately representative of the class, and therefore appoints them as class representatives.

## IV. THE PROPOSED SETTLEMENT AGREEMENT

At the preliminary approval phase, the Court need only decide whether the settlement is *potentially* fair. *See Acosta*, 243 F.R.D. at 386. Once the Court approves the settlement and the class members have been notified and provided an opportunity to object, the Court will hold a formal fairness hearing to determine whether the Settlement is fair, reasonable, and adequate. *See* Manual for Complex Litigation (Fourth) §§ 21.632-34 (2012). "A full fairness analysis is unnecessary until the Court conducts the final fairness hearing." *Hollis v. Union Pac. R.R. Co.*, No. EDCV 17-2449 JGB (SHKx), 2018 WL 6273014, at *5 (C.D. Cal. Mar. 6, 2018) (citing *Campbell v. First Investors Corp.*, No. 11-CV-0548 BEN WMC, 2012 WL 5373423, at *4 (S.D. Cal. Oct. 29, 2012)). "Although closer scrutiny is reserved for the final approval hearing, the showing at the preliminary approval stage – given the amount of time, money and resources involved in, for example, sending out new class notices – should be good enough for final approval." *Wright v. Renzenberger, Inc.*, No. CV 13-6642 FMO (AGRx), 2019 WL 8163480, at *3 (C.D. Cal. Nov. 25, 2019) (internal citations and alterations omitted). "At this stage, the court may grant preliminary approval of a settlement and direct notice to the class if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 327 (C.D. Cal. 2016) (internal quotation marks omitted)

### A. The Settlement Agreement Negotiations

"This circuit has long deferred to the private consensual decision of the parties." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). The Ninth Circuit has "emphasized" that "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id*. (internal quotation marks omitted). When the settlement is "the product of an arms-length, non-collusive, negotiated resolution[,]" courts afford the parties the presumption that the settlement is fair and reasonable. *Id.*; *see Spann*, 314 F.R.D. at 324 ("A presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery." (internal citation omitted)).

Here, the Settlement Agreement was reached after arms-length negotiations between counsel for the parties. The parties set in place a protective order to allow for discovery and exchange of all information required to most effectively mediate this case. (Franzini Decl. ¶¶ 9). They then carried out a full-day mediation before an experienced mediator. (*Id.* ¶ 11). However, the initial mediation did not lead to settlement. (*Id.*). Instead, the parties continued to negotiate through the mediator and ultimately agreed to a mediator's proposal. (*Id.*). Additionally, there are no indications of an improper agreement between the parties to benefit counsel. Instead, Plaintiff's counsel must file a motion for attorneys' fees separately, and the Agreement's maximum allowance for attorneys' fees totals to less than 15% of the full settlement value. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015) (establishing a 25% benchmark for fees in common fund cases). Based on the Court's review of the underlying record, the parties had a sound basis for measuring the terms of the settlement against the risks of continued litigation, and there is no evidence that the settlement was "the product of fraud or overreaching by, or collusion between, the negotiating parties[.]" *Rodriguez*, 563 F.3d at 965 (quoting *Officers for*

*Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982)). Accordingly, the Court finds the Settlement Agreement resulted from sufficiently serious, informed, non-collusive negotiations.

### B. Release of Claims

The Court next considers whether the Settlement Agreement contains an overly broad release of liability. *See* 4 Newberg on Class Actions § 13:15, at p. 326-27 (5th ed. 2014) ("Beyond the value of the settlement, courts have rejected preliminary approval when the proposed settlement contains obvious substantive defects such as ... overly broad releases of liability."); *Hadley v. Kellogg Sales Co.*, No. 16-CV-04955-LHK, 2020 WL 836673, at *2 (N.D. Cal. Feb. 20, 2020) (finding the issue of whether a release is overly broad to be "sufficient to deny the motion for preliminary approval").

"A settlement agreement may preclude a party from bringing a related claim in the future 'even though the claim was not presented and might not have been presentable in the class action,' *but only* where the released claim is 'based on the identical factual predicate as that underlying the claims in the settled class action.'" *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (quoting *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008) (emphasis added)). "Put another way, a release of claims that 'go[es] beyond the scope of the allegations of the operative complaint' is impermissible." *Lovig v. Sears, Roebuck & Co.*, No. EDCV 11-00756-CJC, 2014 WL 8252583, at *2 (C.D. Cal. Dec. 9, 2014) (quoting *Willner v. Manpower Inc.*, No. 11–CV–02846–JST, 2014 WL 4370694, at *7 (N.D. Cal. Sept. 3, 2014)). Therefore, "[d]istrict courts in this Circuit have declined to approve settlement agreements where such agreements would release claims based on different facts than those alleged in the litigation at issue." *Chavez v. PVH Corp.*, No. 13–CV–01797–LHK, 2015 WL 581382, at *5 (N.D. Cal. Feb. 11, 2015).

Here, the release is sufficiently narrowly tailored. It makes clear that the only claims being released in the agreement are limited to those that were "alleged in the operative complaint, or which arise from the same facts and claims alleged in the operative complaint

in the Action" or those that could have been brought in the action. Therefore, it is not overly broad under the Ninth Circuit's formulation.

### C. Settlement Amount

In assessing the consideration class members receive out of a class action settlement, "[i]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Officers for Justice*, 688 F.2d at 628. Therefore, a proposed settlement may be acceptable even if it amounts to a fraction of the potential recovery that might be available to class members at trial. *See Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal citation omitted).

Here, the Settlement Agreement provides for a total amount of $10,000,000.00 with approximately $8,500,000 of that amount allotted to go directly to class members. This allows class members to receive 12% of their purchase price back. Plaintiffs have not made clear what percentage this amounts to of the total potential recovery. However, Plaintiffs have made clear that the Settlement Agreement provides for automatic disbursal of settlement funds to class members, in the form of store credit. Should the class member prefer to receive cash instead of credit, they may do so by filing a claim, thus meaning that the settlement is not merely a "coupon" settlement. *See Taylor v. Shutterfly, Inc.*, No. 5:18-cv-00266-BLF, 2021 WL 5810294, at *31 (N.D. Cal. Dec. 7, 2021). Furthermore, Plaintiffs represent that there are many items on Defendant's website that sell for between $25-$35, meaning that class members may redeem the credits, should they not file a claim, without expending further of their own funds. (Franzini Decl. ¶ 20); *See also McKnight v. Uber Techs.*, 2021 WL 4205055, at *13–14 (N.D. Cal. Sept. 1, 2021) ("when class members receive cash, as they have the option of doing here, there is no risk of their being forced to spend 'more' of their own money at all, much less on the defendant's product.").

Additionally, the risks of continuing litigation here support preliminary approval of the settlement. For instance, Plaintiffs and Defendants disagree as to whether the Class Certification for purposes of proceeding to trial would be granted. (Mot. at 29). Furthermore, despite the substantive exchange of discovery in this case, it is otherwise still

in a relatively early stage, meaning class certification, potential summary judgment, and ultimately trial would remain as hurdles to recovery. Overall then, the settlement amount here supports preliminary approval.

### D. Attorneys' Fees and Incentive Awards

When considering motions for preliminary approval of class settlements, courts are wary of attorneys' fees awards that demonstrate too great a recovery for counsel, thereby indicating potential collusion. *See Rodriguez*, 563 F.3d at 965. In considering the proposed award of attorney's fees, the Court scrutinzes the Settlement for three factors that tend to show collusion: "(1) when counsel receives a disproportionate distribution of the settlement; (2) when the parties negotiate a 'clear sailing arrangement,' under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a 'kicker' or 'reverter' clause that returns unawarded fees to the defendant, rather than the class." *Briseno v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021) (internal quotation marks and alterations omitted). Likewise, Courts are careful that compensation to class representatives for work undertaken on behalf of a class are "fair and typical." *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 943. However, as outlined above, here, the agreement allows Plaintiffs' counsel to seek an award of attorneys' fees and costs up to approximately 15% of the Settlement's total value.[1] This amount is not so high as to warrant denial of a motion for preliminary approval. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 953 (approving fee award of 25%). Additionally, the agreement does not provide for approval of any request for attorneys' fees, but instead dictates that Plaintiffs' counsel will file such a request before the Court. Finally, the proposed allotment of a $2,500 service award for each named Plaintiff, amounting to 0.05% of the total settlement value, appears fair and reasonable here. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015) (finding

---

[1] The Court notes that Class Counsel has represented that it will likely seek less than this total amount given the other needs for administration that must come out of the allotted funds.

incentive awards for named plaintiffs generally range between $2,000 and $10,000). Therefore, this weighs in favor of preliminary approval.

### E. Notice

When reviewing settlements in Rule 23(b)(3) class actions, "the court must direct notice to the class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). Individual notice must be sent to all class members "whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). District courts have "broad power and discretion" to determine the contours of appropriate class notice. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 344 (1979).

The parties have proposed a multi-step notice plan in the instant action. First, Defendant will provide a Class List including all Class Members and their emails and addresses, to the Settlement Administrator. (Settlement Agreement §III(C)). Second, all Class Members will be sent emails with notice, or, if email fails, they will be sent a notice in the mail. (*Id.* §IV(A–B)). The notices will provide information about the nature of the claims in the suit, the Settlement, and the Settlement Class Members' options, including the choice to either receive the settlement amount in credit or file a claim to receive it in cash. (*Id.*). The notices will also inform Class Members of their right to opt out or object to the Settlement. (*Id.*). The notices will direct Class Members that they can obtain further information at a Settlement Website or via a hotline, both of which will be set up by the Settlement Administrator. (*Id.*§ IV (C–D)). Additionally, the parties propose that the Court appoint Angeion Group ("Angeion") as the Settlement Administrator. (Mot. at 16). The parties propose Angeion after obtaining bids from multiple settlement administration services. (Franzini Decl. ¶ 16).

The Court finds that the proposed notice is "reasonably calculated, under all the circumstances, to apprise all [class members]" of the proposed settlement. *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1045 (9th Cir. 2019). The parties are proposing direct

notice to all class members who can be ascertained based on Defendant's records, and the proposed contents of the notices themselves provide sufficient information regarding the case. *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 567 (("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.") (internal citation omitted). Furthermore, the Court largely adopts[2] the parties' proposed Schedule regarding dissemination of notice as follows:

| Event | Date |
|---|---|
| Defendant to fund the Administration Fund (to be paid to the Settlement Administrator) | 14 days after entry of the order of Preliminary Approval |
| The Settlement Administrator shall email the Notice to all identified Settlement Class Members | 30 days after entry of the order of Preliminary Approval |
| Plaintiffs to file a Motion for Attorneys' Fees and Incentive Awards | 45 days after entry of the order of Preliminary Approval |
| Deadline for objecting to or opting out of the Settlement | 60 days after entry of the order of Preliminary Approval |
| Parties to file a Motion for Final Approval of the Settlement | 75 days after entry of the order of Preliminary Approval |
| Deadline to file a Claim Form seeking a Cash Benefit | 90 days after entry of the order of Preliminary Approval |
| Final Approval Hearing | February 28, 2024 |

---

[2] The Court will set further dates at or following the final approval hearing.

-15-

## V. CONCLUSION

For the foregoing reasons, the Court ORDERS the following:

1. The Unopposed Motion for Preliminary Approval of Class Settlement is GRANTED.
2. The Court preliminarily certifies the class, as defined in § I(DD) of the Settlement Agreement for purposes of settlement.
3. For settlement purposes only, the Court hereby appoints: (1) Plaintiffs Elisa Montes De Oca and Gabriela Fernandez as the Class Representatives; (2) Dovel & Luner as Class Counsel; and (3) Angeion Group as the Settlement Administrator.
4. A Final Approval Hearing shall be held on February 28, 2024, at 1:30 p.m. in the United States District Court, Central District of California, Courtroom 5B, located at 350 W. 1st Street, Los Angeles, California, 90012.

**IT IS SO ORDERED.**

DATED: October 25, 2023

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE