Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Grace Bennett (Cal. Bar No. 345948)
grace@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

ROGER BARR, ELISA MONTES DE OCA, and GABRIELA FERNANDEZ, each individually and on behalf of all others similarly situated,

*Plaintiffs*,

v.

SELECTBLINDS LLC,

*Defendant.*

Case No. 2:22-cv-08326-SPG-PD

**Plaintiffs' Unopposed Notice of Motion and Motion for Final Approval of Class Action Settlement**

Date: February 28, 2024
Time: 1:30 p.m.
Dept: Courtroom 5C
Judge: Hon. Sherilyn Peace Garnett

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 28, 2024, at 1:30 p.m., in Courtroom 5C of the United States District Court for the Central District of California, located at 350 W. 1st Street, Los Angeles, California 90012, Plaintiffs Elisa Montes de Oca and Gabriela Fernandez will and hereby do move this Court for entry of an order:

1.     Finally certifying the Settlement Class for settlement purposes;

2.     Finally approving the class action Settlement as fair, adequate, and reasonable.

This Motion is based on this Notice of Motion and Motion for Final Approval of Class Action Settlement, the Declarations of Simon Franzini and Omeikiea Lorenzano, filed concurrently herewith, all supporting exhibits filed herewith, all other pleadings and papers filed in this action, and any argument or evidence that may be presented at the hearing in this matter. This Motion is unopposed by Defendant, SelectBlinds LLC.

Dated: January 8, 2024

By: */s/ Simon Franzini*
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Grace Bennett (Cal. Bar No. 345948)
grace@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiffs*

# Table of Contents

I.    Introduction............................................................................................1

II.   The Settlement. ....................................................................................1

    A.    The Settlement Class.....................................................................1

    B.    Direct benefits paid to the Settlement Class. ................................2

    C.    Payment of administration costs, attorneys' fees, and incentive awards. ........................................................................................3

    D.    Limited release of claims. ............................................................4

III.  Settlement administration and notice. ...................................................4

    A.    The notice provided to Class Members.........................................4

    B.    The optional claims process..........................................................6

    C.    Opt-outs and objections. ...............................................................7

    D.    CAFA Notice. ...............................................................................7

IV.   The Court should finally approve the Settlement....................................7

    A.    The Court should finally certify the Settlement Class. ..................7

    B.    The Settlement is fair, adequate, and reasonable...........................8

        1.    Plaintiffs' case is strong, but continued litigation would present significant risks to class-wide recovery....................8

        2.    Class Counsel thoroughly investigated the claims, conducted significant informal discovery, and was well-informed during negotiations...................................................................12

        3.    The Settlement will provide outstanding relief—worth approximately $10 million in total—to the Settlement Class...........13

        4.    Class Counsel has substantial experience with class litigation, and Class Counsel and the Class Representatives fairly and adequately represented the Class's interests. ..................17

        5.    The Class's reaction to the settlement was overwhelmingly positive. ........................................................................19

V.     Conclusion. ............................................................................................21

# Table of Authorities

## Cases

*Adams v. Haan,*
2020 U.S. Dist. LEXIS 176002 (2020 WL 5648605) (C.D. Cal. Sep. 3, 2020) ...............9

*Asghari v. Volkswagen Grp. of Am.*, Inc.,
2015 U.S. Dist. LEXIS 188824 (2015 WL 12732462) (C.D. Cal. May 29, 2015)..........19

*Baker v. Seaworld Entm't, Inc.,*
2020 U.S. Dist. LEXIS 131109 (2020 WL 4260712) (S.D. Cal. July 24, 2020).............14

*Bell v. Consumer Cellular, Inc.,*
2017 U.S. Dist. LEXIS 95401 (2017 WL 2672073) (D. Or. June 21, 2017) .................16

*Bellinghausen v. Tractor Supply Co.,*
306 F.R.D. 245 (N.D. Cal. 2015) .........................................................................13

*Bravo v. Gale Triangle, Inc.,*
2017 U.S. Dist. LEXIS 77714 (2017 WL 708766) (C.D. Cal. Feb. 16, 2017)..........11, 20

*Broomfield v. Craft Brew All, Inc.,*
2020 U.S. Dist. LEXIS 74801 (2020 WL 1972505) (N.D. Cal. Feb. 5, 2020) .........13, 14

*Browning v. Yahoo! Inc.,*
2007 U.S. Dist. LEXIS 86266 (2007 WL 4105971) (N.D. Cal. Nov. 16, 2007) ...........21

*Chester v. TJX Cos.,*
2017 U.S. Dist. LEXIS 201121 (2017 WL 6205788) (C.D. Cal. Dec. 5, 2017) .......14, 15

*Chowning v. Kohl's Dep't Stores, Inc.,*
2016 U.S. Dist. LEXIS 188341 (C.D. Cal. Apr. 1, 2016) ...........................................9, 10

*Chowning v. Kohl's Dep't Stores, Inc.,*
2016 U.S. Dist. LEXIS 37261 (2016 WL 1072129) (C.D. Cal. Mar. 15, 2016)...............9

*Chun-Hoon v. McKee Foods Corp.,*
716 F. Supp. 2d 848 (N.D. Cal. 2010)...................................................................20

*Churchill Vill., L.L.C. v. GE,*
361 F.3d 566 (9th Cir. 2004) ...............................................................................20

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ................................................................. 8

*Cody v. SoulCycle Inc.*,
   2017 U.S. Dist. LEXIS 163965 (C.D. Cal. Oct. 3, 2017) ....................... 16

*De Leon v. Ricoh USA, Inc.*,
   2020 U.S. Dist. LEXIS 56285 (2020 WL 1531331) (N.D. Cal. Mar. 31, 2020) ............ 19

*Dennis v. Kellogg Co.*,
   2013 U.S. Dist. LEXIS 163118 (2013 WL 6055326) (S.D. Cal. Nov. 14, 2013) ............ 5

*Ebarle v. Lifelock, Inc.*,
   2016 U.S. Dist. LEXIS 6698 (N.D. Cal. Jan. 20, 2016) ...................................... 17

*Edwards v. Nat'l Milk Producers Fed'n*,
   2017 U.S. Dist. LEXIS 145217 (N.D. Cal. June 26, 2017) ................................... 5

*Felix v. WM. Bolthouse Farms, Inc.*,
   2020 U.S. Dist. LEXIS 78280 (2020 WL 2111365) (E.D. Cal. May 4, 2020) ............... 17

*Free Range Content, Inc. v. Google, LLC*,
   2019 U.S. Dist. LEXIS 47380 (2019 WL 1299504) (N.D. Cal. Mar. 21, 2019) ............ 19

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ................................................................. 8

*Hartless v. Clorox Co.*,
   273 F.R.D. 630 (S.D. Cal. 2011) ............................................................. 5

*Hashemi v. Bosley, Inc.*,
   2022 U.S. Dist. LEXIS 210946 (2022 WL 18278431) (C.D. Cal. Nov. 21, 2022) ......... 13

*Hendricks v. Ference*,
   754 F. App'x 510 (9th Cir. 2018) ........................................................... 16

*In re Apple Inc. Device Performance Litig.*,
   2023 U.S. Dist. LEXIS 27892 (2023 WL 2090981) (N.D. Cal. Feb. 17, 2023) ....... 17, 18

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ................................................................. 18

*In re LinkedIn User Privacy Litig.,*

    309 F.R.D. 573 (N.D. Cal. 2015) ............................................................. 11, 12, 15

*In re MagSafe Apple Power Adapter Litig.,*

    2015 U.S. Dist. LEXIS 11353 (2015 WL 428105) (N.D. Cal. Jan. 30, 2015) ................. 9

*In re Online DVD-Rental Antitrust Litig.,*

    779 F.3d 934 (9th Cir. 2015) ........................................................... 7, 15, 16, 21

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.,*

    2013 U.S. Dist. LEXIS 123298 (C.D. Cal. July 24, 2013) .................................. 7

*In re Tracfone Unlimited Serv. Plan Litig.,*

    112 F. Supp. 3d 993 (N.D. Cal. 2015) ...................................................... 10, 11

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.,*

    2020 U.S. Dist. LEXIS 129939 (2020 WL 4212811) (N.D. Cal. July 22, 2020) ........... 18

*Jacobo v. Ross Stores, Inc.,*

    2016 U.S. Dist. LEXIS 86958 (C.D. Cal. Feb. 23, 2016) .................................... 9

*Jacobo v. Ross Stores, Inc.,*

    2018 U.S. Dist. LEXIS 248252 (2018 WL 11465299) (C.D. Cal. Dec. 7, 2018) ..... 14, 15

*Judson v. Goldco Direct, LLC,*

    2021 U.S. Dist. LEXIS 258173 (2021 WL 8462049) (C.D. Cal. June 11, 2021) ........... 19

*Klee v. Nissan N. Am., Inc.,*

    2015 U.S. Dist. LEXIS 88270 (2015 WL 4538426) (C.D. Cal. July 7, 2015) ............. 9, 16

*Lowery v. Rhapsody Int'l, Inc.,*

    75 F.4th 985 (9th Cir. 2023) .................................................................... 14

*McKenzie v. Fed. Express Corp.,*

    2012 U.S. Dist. LEXIS 103666 (2012 WL 2930201) (C.D. Cal. July 2, 2012) .............. 11

*Medeiros v. HSBC Card Servs.,*

    2017 U.S. Dist. LEXIS 178484 (2017 WL 11632870) (C.D. Cal. Oct. 23, 2017) .......... 15

*Mueller v. Puritan's Pride, Inc.,*

    2021 U.S. Dist. LEXIS 226103 (2021 WL 5494254) (N.D. Cal. Nov. 23, 2021) .......... 10

*Munday v. Navy Fed. Credit Union*,

    2016 U.S. Dist. LEXIS 193973 (2016 WL 7655807) (C.D. Cal. Sep. 15, 2016) ........6, 20

*Officers for Justice v. Civil Serv. Com.*,

    688 F.2d 615 (9th Cir. 1982) ............................................................................. 8

*Ontiveros v. Zamora*,

    303 F.R.D. 356 (E.D. Cal. 2014) ..................................................................... 13

*Rael v. Children's Place, Inc.*,

    2020 U.S. Dist. LEXIS 13970 (2020 WL 434482) (S.D. Cal. Jan. 28, 2020).................10

*Razo v. AT&T Mobility Servs.*,

    2023 U.S. Dist. LEXIS 72755 (2023 WL 3093845) (E.D. Cal. Apr. 26, 2023).............19

*Reyes v. CVS Pharmacy, Inc.*,

    2016 U.S. Dist. LEXIS 84721 (2016 WL 3549260) (E.D. Cal. June 28, 2016)...............9

*Ronquillo-Griffin v. TransUnion Rental Screening Sols., Inc.*,

    2019 U.S. Dist. LEXIS 79021 (S.D. Cal. May 9, 2019)....................................12

*Schaffer v. Litton Loan Servicing, LP*,

    2012 U.S. Dist. LEXIS 189830 (C.D. Cal. Nov. 13, 2012) .............................................11

*Schneider v. Chipotle Mexican Grill, Inc.*,

    336 F.R.D. 588 (N.D. Cal. 2020).........................................................6, 11, 20, 21

*Shvager v. Viasat, Inc.*,

    2014 U.S. Dist. LEXIS 200808 (2014 WL 12585790) (C.D. Cal. Mar. 10, 2014) ..10, 20, 21

*Spann v. J.C. Penney Corp.*,

    314 F.R.D. 312 (C.D. Cal. 2016)...................................................................15, 16

*Sperling v. DSW Inc.*,

    2016 U.S. Dist. LEXIS 11012 (2016 WL 354319) (C.D. Cal. Jan. 28, 2016) ...................9

*Sperling v. Stein Mart, Inc.*,

    291 F. Supp. 3d 1076 (C.D. Cal. 2018) ............................................................9

*Staton v. Boeing Co.*,

    327 F.3d 938 (9th Cir. 2003) ............................................................................8, 21

*Tait v. BSH Home Appliances Corp.*,

    2015 U.S. Dist. LEXIS 98546 (2015 WL 4537463) (C.D. Cal. July 27, 2015) ..............11

*Taylor v. Shutterfly, Inc.*,

    2021 U.S. Dist. LEXIS 237069 (2021 WL 5810294) (N.D. Cal. Dec. 7, 2021).........7, 21

*Testone v. Barlean's Organic Oils, LLC*,

    2023 U.S. Dist. LEXIS 37308 (2023 WL 2375246) (S.D. Cal. Mar. 6, 2023) ...............18

*Vasquez v. Coast Valley Roofing, Inc.*,

    266 F.R.D. 482 (E.D. Cal. 2010) ........................................................................19

Plaintiffs' Motion for Final Approval                    Case No. 2:22-cv-08326-SPG-PD

**Memorandum of Points and Authorities**

## I. Introduction.

The Parties reached a hard-fought class-wide settlement in this case. Under the Settlement, Class Members are set to receive benefits worth a total of $10,000,000, with an average direct payment of $75 to each Class Member. This is an excellent outcome for the Class, especially given the significant risks presented by continued litigation.

On October 25, 2023, this Court considered the Settlement, preliminarily certified the Settlement Class, and preliminarily found that the Settlement was fair, adequate, and reasonable, and granted preliminary approval. Dkt. 52 ("Preliminary Approval Order") at 16. After preliminary approval was granted, the Settlement Administrator faithfully executed the approved notice plan. *Id.* at 14-15. Notice was near universal and achieved a significantly above-average claims rate. And, the class reaction was overwhelmingly positive: not a single Class Member opted out of or objected to this Settlement.

Each of the factors the Court considered at preliminary approval supports final approval now that notice has been administered and the Settlement Class universally supports the Settlement. Though the Court's review at preliminary approval was of course preliminary, the Court has already addressed each of the factors that are relevant at final approval and examined all the material terms of the Settlement. And nothing has changed since that review that should cause the Court to reconsider its prior decision.

Accordingly, the Court should grant final approval and finally certify the Settlement Class.

## II. The Settlement.

### A. The Settlement Class.

The Settlement Class, as conditionally certified by the Preliminary Approval Order, consists of all individual consumers who purchased one or more products from the SelectBlinds.com website for personal, family, or household purposes while residing in California, during the Class Period. Preliminary Approval Order at 9; *see* Dkt. 42-1 ("Agreement") §I(DD). According to Defendant's records, there are 111,509 class

members. Lorenzano Decl. ¶6.[1]

### B.    Direct benefits paid to the Settlement Class.

The Settlement Agreement requires SelectBlinds to pay approximately $10,000,000 in benefits to the Settlement Class. Agreement §§III(E)(1), III(H)(1). Defendant will pay each Class Member an amount equal to 12% of that Class Member's total purchases from Defendant during the class period. *Id.* §III(E)(1). On average, this amounts to $75 per Class Member. Franzini Decl. ¶21. And in total, the Settlement Class will receive approximately $8,500,000 in direct benefits. *Id.* §III(E)(1).

The Agreement requires Defendant to make payments to each Settlement Class Member in one of two ways, at the Class Member's election. *Id.* §III(E)(1). Settlement Class Members can either: (1) file a claim and receive the payment they are entitled to in cash; or (2) do nothing, and automatically receive payment in the form of store credit that does not expire and can be used on any purchase on SelectBlinds.com. *Id.* §III(E)(1-4). This automatic distribution procedure ensures that 100% of Class Members—even those who do not file a claim—will actually receive the compensation they are due.

To make a claim, Settlement Class Members must fill out and submit a claim form online, or, if they prefer, mail the form to the Settlement Administrator. *Id.* §III(F)(2). The Claim Form is conveniently available on the Settlement website. Settlement Class Members can choose to receive cash payments through an online service like PayPal, via a pre-paid Mastercard, or in the form of a physical check delivered by the Settlement Administrator. *Id.* §III(G)(3). As discussed in greater detail below, 8,368 Class Members have thus far submitted a claim for cash relief. *See* §III(B) below. And Class Members still have until January 23, 2024, to file a claim, meaning that this number will continue to grow. Preliminary Approval Order, 15 (setting the deadline to submit a claim form).

---

[1] At Preliminary Approval, the Parties had estimated that there would be 113,377 Class Members. Dkt. 42 ("Preliminary Approval Motion") at 9. Because the Parties' estimate was substantially accurate, all of the numbers the Parties' presented at Preliminary Approval (which were based on the estimate) are substantially accurate too.

If a Class Member does not file a claim for cash relief, they will automatically receive store credit that can be used to purchase any product sold on SelectBlinds' website. *Id.* §III(E)(3). Because SelectBlinds sells numerous products for less (often far less) than the average credit value of $75, Class Members will be able to purchase products without spending any more of their own money. Franzini Decl. ¶19. And, the store credits never expire, can be used at any time with no blackout dates, and can be combined or "stacked" with other any other promotions or discounts. Agreement, §III(E)(3). This affords Class Members who choose to receive store credit maximum flexibility to use it when and how they want.

### C. Payment of administration costs, attorneys' fees, and incentive awards.

The Settlement also requires SelectBlinds to pay an additional $1,497,500—on top of the direct payments discussed above—to cover notice and administration costs, attorneys' fees and costs, and incentive awards. Agreement, §III(H)(1).

As of today, the Settlement Administrator has incurred $36,736 in notice and administration costs. Lorenzano Decl. ¶21. And it estimates it will incur another $30,000 in additional costs to administer the Settlement through conclusion. *Id.* Thus, total notice and administration costs are expected to be approximately $66,736.86. *See* Preliminary Approval Motion at 7 (estimating that administration would cost between $63,990-74,000); Dkt. 42-5 (Declaration of Steven Weisbrot), ¶30 (estimating approximate costs of $63,990, with a maximum cap of $74,000).

In addition, Class Counsel requested a fee award of $1,414,044 and costs of $11,719.[2] Together, this amounts to $1,425,764—less than 15% of the total Settlement

---

[2] In the Motion for Attorneys' Fees and Incentive Awards, Class Counsel sought $1,416,790 in fees and $11,719 in costs, but explained that this request assumed that notice and administration costs would equal the Settlement Administrator's estimate, and that, if administration costs were higher, they "would reduce [the] request accordingly to reflect this." Dkt. 53-1 (Franzini Declaration in Support of Fees Motion), ¶28 n.2. Because costs were higher than the estimate, the ultimate fee request is for $1,414,044 in fees and $11,719 in costs.

3

value. Dkt. 53 ("Motion for Attorneys' Fees, Costs, and Incentive Awards"), 1.

Class Counsel also requested $2,500 incentive awards for each of Class Representative, for a total of $5,000. *Id.* at 1. As explained in that Motion, these awards are justified to compensate the Class Representatives for their crucial service to the Class. *Id.* at 24-25; Preliminary Approval Order at 13 ("[T]he proposed allotment of a $2,500 service award for each named Plaintiff, amounting to 0.05% of the total settlement value, appears fair and reasonable here.")

## D. Limited release of claims.

The Agreement provides a narrowly tailored release of only those claims that "arise from the same facts and claims alleged" in the First Amended Complaint. *Id.* §III(D). As the Court found in the Preliminary Approval Order, this "release is sufficiently narrowly tailored. It makes clear that the only claims being released in the agreement are limited to those that were 'alleged in the operative complaint, or which arise from the same facts and claims alleged in the operative complaint in the Action' or those that could have been brought in the action." Preliminary Approval Order, 11-12. Thus, "it is not overly broad under the Ninth Circuit's formulation." *Id.*

## III. Settlement administration and notice.

### A. The notice provided to Class Members.

Angeion Group—the Court appointed Settlement Administrator—administered notice to the Settlement Class as directed in the Preliminary Approval Order. Preliminary Approval Order, 15 (approving the proposed notice plan); *id.* at 16 (naming Angeion Group the Settlement Administrator). First, Angeion collected a Class List consisting of names, emails, and addresses from Defendant. Lorenzano Decl. ¶5. The list identified 111,509 Class Members. *Id.* Using this list, Angeion sent direct email notice to all Class Members with valid email addresses, totaling 108,056 Class Members. *Id.* ¶7-8. The notice forms, which were approved by the Court in the Preliminary Approval Order, provided information about the nature of the claims asserted in the lawsuit, a summary of the Settlement terms, relevant deadlines as set by the Court, and a statement about the

release of claims. Preliminary Approval Order at 15 (approving contents of notice form); Preliminary Approval Motion, Exhibit 1 (showing the notice forms). The notices also provided instructions on how Class Members could file a claim for a cash payment, and how they could opt-out or object to the Settlement, along with respective deadlines. Email notice was successfully delivered to 106,381 Class Members, more than 96% of Class Members. Lorenzano Decl. ¶8.

Where email addresses were invalid or email notice was undeliverable, Angeion provided mail notice—via postcard notice forms also approved by this Court—to the Class Members' most recent California address according to Defendant's records. *Id.* ¶10. Mail notice was delivered to an additional 5,080 Class Members in this manner. *Id.* ¶10-12 (mail notice was undeliverable to 48 Class Members).

In total, direct notice was successful for approximately 99.9% of the Class. *Id.* This near-universal notice is an excellent result, far more than is required. *See Edwards v. Nat'l Milk Producers Fed'n*, 2017 U.S. Dist. LEXIS 145217[3], at *19 (N.D. Cal. June 26, 2017) ("[N]otice plans estimated to reach a minimum of 70 percent are constitutional and comply with Rule 23."); *Dennis v. Kellogg Co.*, 2013 U.S. Dist. LEXIS 163118, at *18 (S.D. Cal. Nov. 14, 2013) ("Rule 23 only requires that the notice be the 'best practicable under the circumstances.' It need not be perfect.") (citations omitted); *see e.g.*, *Hartless v. Clorox Co.*, 273 F.R.D. 630, 641 (S.D. Cal. 2011) (notice sufficient where it was "estimated to reach 75-83 percent of the class.").

In addition to direct notice, Angeion designed and hosted a Settlement Website dedicated to providing Class Members with information about the Settlement. Lorenzano Decl. ¶13-15 (explaining that, as of January 4, 2024, the Website had received 30,080 page views). The Website provides relevant documents concerning the

---

[3] Class Counsel's firm uses Lexis, so Class Counsel does not have access to Westlaw. For some, but not all, unpublished cases, Lexis includes the Westlaw citation (but even for those, not the pincites). For those cases, Class Counsel included the Westlaw citation in the Table of Authorities, to attempt to accommodate the Court's preference for Westlaw cites to the extent possible.

Settlement, including the Settlement Agreement, the Preliminary Approval Motion and Order, and, after it was filed, Class Counsels' Motion for Fees and Incentive Awards (and all accompanying documents).[4]  It also includes a page dedicated to Frequently Asked Questions concerning the claims in the lawsuit, the settlement benefits and structure, how to file a claim form, how to opt-out or object to the settlement, and Class Counsels' role in the Settlement and requested fees. And it provides a fillable version of the Claim Form that Settlement Class Members can easily fill out and submit online. Finally, the Settlement Website (along with the distributed notice forms) provides contact information for Angeion and Class Counsel in case Class Members have questions, and lists the number of a toll-free hotline that has run 24 hours a day, 7 days a week since notice was first disseminated. Lorenzano Decl. ¶16.

**B.    The optional claims process.**

As explained above, Class Members have the option to file a claim form to receive cash relief. The claims form is simple to fill out and can be submitted both online and through the mail. Class Members received clear instructions on how to access and file a claim form. Preliminary Approval Motion, Exhibit 1 (showing notice forms explaining how to file a claim form); https://www.sbclassactionsettlement.com/faqs (explaining how to access and submit a claim form).

That notice was successfully administrated is demonstrated by a thus-far cash claim rate of roughly 7.5%. Lorenzano Decl. ¶18. This rate—which will likely increase before the January 23 claims deadline—is well above average. *See Munday v. Navy Fed. Credit Union*, 2016 U.S. Dist. LEXIS 193973, at *23 n.1 (C.D. Cal. Sep. 15, 2016) ("[D]istrict courts have recognized that '[t]he prevailing rule of thumb with respect to consumer class actions is [a claims rate of] 3-5 percent.'"); *see e.g.*, *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 599 (N.D. Cal. 2020) ("Here, the 0.83% claims rate (which represents the estimated size of the targeted population of potential class

---

[4] This Motion, along with supporting documents, will be uploaded to the Settlement Website after they are filed with the Court.

members compared to the actual claim submissions) is on par with other consumer cases."); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944-45 (9th Cir. 2015) (affirming approval of settlement where less than 3.4% of class members filed claims). And this rate is particularly impressive given that the Settlement provides for automatic relief to Class Members, meaning that Class Members who preferred to receive their benefits under the settlement in the form of store credit did not need to file a claim. *See Taylor v. Shutterfly, Inc.*, 2021 U.S. Dist. LEXIS 237069, at *21 (N.D. Cal. Dec. 7, 2021) (approving Settlement where the cash claims rate was approximately 2.5%).

### C.    Opt-outs and objections.

As explained above, Class Members were provided specific instructions on how to object or opt out of the settlement, in both direct notice forms and on the Settlement Website. But not a single Class Member filed an objection or requested to be excluded from the Settlement. Lorenzano Decl. ¶19-20.

### D.    CAFA Notice.

Finally, Angeion served notice of the proposed Settlement to state and federal officials as required by CAFA. *Id.* ¶4. No government official has objected to the Settlement in response to this notice.

## IV.    The Court should finally approve the Settlement.

### A.    The Court should finally certify the Settlement Class.

In the Preliminary Approval Order, the Court found that "all of Rule 23's factors have been satisfied," and thus, "conditionally certifie[d] Plaintiff's proposed class for purposes of settlement." Preliminary Approval Order at 5. The Court then specifically addressed each relevant factor and explained how each is satisfied by the Settlement Class. *Id.* at 5-6. Nothing has changed since then, and, accordingly, the Court should reach the same conclusion here for all the reasons set forth in the Court's Preliminary Approval Order. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 2013 U.S. Dist. LEXIS 123298, at *241 (C.D. Cal. July 24, 2013*)* (certifying class and stating "[n]othing has changed in the five-month period between

1  that preliminary class certification and today that suggests to the Court that the class
2  should be decertified"); *see generally* Preliminary Approval Order.

3       **B.    The Settlement is fair, adequate, and reasonable.**

4       A court may approve a class action settlement "only on finding that it is fair,
5  reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "To determine whether a settlement
6  agreement meets these standards, a district court must consider a number of factors,
7  including: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely
8  duration of further litigation; (3) the risk of maintaining class action status throughout
9  trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the
10  stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a
11  governmental participant; and (8) the reaction of the class members to the proposed
12  settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (numbers added for
13  clarity).

14       "The relative degree of importance to be attached to any particular factor will
15  depend upon and be dictated by the nature of the claims advanced, the types of relief
16  sought, and the unique facts and circumstances presented by each individual case."
17  *Officers for Justice v. Civil Serv. Com.*, 688 F.2d 615, 625 (9th Cir. 1982. And in weighing the
18  factors, courts must remember that "[s]ettlement is the offspring of compromise; the
19  question ... is not whether the final product could be prettier, smarter or snazzier, but
20  whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d
21  1011, 1027 (9th Cir. 1998); *see Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir.
22  1992) ("[S]trong judicial policy . . . favors settlements, particularly where complex class
23  action litigation is concerned.").

24       Here, Class Counsel negotiated an excellent settlement that should be finally
25  approved.

26       **1.    Plaintiffs' case is strong, but continued litigation would present
27            significant risks to class-wide recovery.**

28  In reaching the Settlement, Class Counsel reasonably balanced the strength of

Plaintiffs' case with the significant risks and substantial expense of continued litigation. While Class Counsel remains confident in the strength of the claims, "[t]he parties contest liability, and this settlement arises very early in the litigation, before any motions practice or class certification." *Klee v. Nissan N. Am., Inc.*, 2015 U.S. Dist. LEXIS 88270, at \*20 (C.D. Cal. July 7, 2015); *see Reyes v. CVS Pharmacy, Inc.*, 2016 U.S. Dist. LEXIS 84721, at \*22 (E.D. Cal. June 28, 2016) (where "litigation remain[ed] in the early stages and [was] likely to continue for some time," settlement at that "stage appropriately balance[d] counsel's ability to develop an informed position with the desire to minimize risk, expense, and delay."). And, "[p]roceeding in this litigation in the absence of settlement poses various risks such as dismissal upon a dispositive motion, potentially potent defenses, increased costs and fees, and expiration of a substantial amount of time. Such considerations have been found to weigh heavily in favor of settlement." *In re MagSafe Apple Power Adapter Litig.*, 2015 U.S. Dist. LEXIS 11353, at \*20 (N.D. Cal. Jan. 30, 2015).

Counsel approached negotiations recognizing that courts have dismissed similar class claims alleging fake discounts at every stage of litigation: on the pleadings, *see e.g.*, *Adams v. Haan*, 2020 U.S. Dist. LEXIS 176002, at \*1 (C.D. Cal. Sep. 3, 2020) (granting defendant's motion to dismiss in fake discount case); *Jacobo v. Ross Stores, Inc.*, 2016 U.S. Dist. LEXIS 86958, at \*1 (C.D. Cal. Feb. 23, 2016) (same); *Sperling v. DSW Inc.*, 2016 U.S. Dist. LEXIS 11012, at \*25 (C.D. Cal. Jan. 28, 2016) (same); at summary judgment, *see e.g.*, *Sperling v. Stein Mart, Inc.*, 291 F. Supp. 3d 1076, 1087 (C.D. Cal. 2018) (granting defendant's motion for summary judgment in a fake discount case); *Chowning v. Kohl's Dep't Stores, Inc.*, 2016 U.S. Dist. LEXIS 37261, at \*1 (C.D. Cal. Mar. 15, 2016); and at class certification, *see e.g.*, *Chowning v. Kohl's Dep't Stores, Inc.*, 2016 U.S. Dist. LEXIS 188341, at \*1 (C.D. Cal. Apr. 1, 2016) (denying motion for class certification in fake discount case); *Mueller v. Puritan's Pride, Inc.*, 2021 U.S. Dist. LEXIS 226103, at \*22 (N.D.

Cal. Nov. 23, 2021) (denying certification of a 23(b)(3) damages class).[5]  *See Shvager v. Viasat, Inc.*, 2014 U.S. Dist. LEXIS 200808, at *22 (C.D. Cal. Mar. 10, 2014) ("The fact that [plaintiff] faced hurdles certifying a class favors a finding that the settlement is fair."). And, Defendant raised several substantive arguments that Plaintiffs would have to defeat and which would make continued litigation complex and risky. *See* Preliminary Approval Motion at 20 (detailing Defendant's arguments); *Shvager*, 2014 U.S. Dist. LEXIS 200808 at *19 (defendant "asserted several defenses to the claims that would have made the litigation hard-fought; this factor, therefore, weighs in favor of finding that the settlement is fair."); *In re Tracfone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 999 (N.D. Cal. 2015) ("[W]hile the Plaintiffs' case appears strong, [defendant] is not without plausible defenses that could have ultimately left class members with a reduced or non-existent recovery. Thus, the first factor favors approval of this settlement.").

For example, Defendant argued that Plaintiffs would be unable to prove damages on a class-wide basis. Preliminary Approval Motion at 20. While Class Counsel has spent significant time developing several viable and accurate class-wide damages models that Class Counsel is confident would have been accepted at class certification, it is true that courts have previously rejected class-wide damages and restitution models in fake discount cases. *See Chowning*, 2016 U.S. Dist. LEXIS 37261, at *38 (granting summary judgment in a fake discount case because the plaintiffs "failed to demonstrate a viable measure of restitution," and rejecting several proposed models); *Rael v. Children's Place, Inc.*, 2020 U.S. Dist. LEXIS 13970, at *30 (S.D. Cal. Jan. 28, 2020) (preliminarily approving fake discount settlement and acknowledging risk of continued litigation where the "state of the law regarding the appropriate method for calculating damages or restitution in these types of false pricing cases is in flux"). Counsel weighed this potentially significant obstacle to class recovery in negotiating this Settlement (while still demanding and achieving excellent relief for the Class). *See In re Tracfone*, 112 F. Supp. 3d

---

[5] To Class Counsel's knowledge, no fake discount case has been taken to trial yet.

993, at 1001 (defendant raised a "significant obstacle to class certification — quantification of class members' damages," and while this, and other arguments concerning class certification "might not ultimately [have] foreclose[d] class certification, they present[ed[] real challenges that Plaintiffs would have [had] to overcome were [the] Court to deny final approval."); *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 597 (N.D. Cal. 2020) ("Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case").

Moreover, regardless of Class Counsels' success litigating this case going forward, continued litigation would impose significant expense and delay, cutting into any ultimate relief achieved for the Class. *See McKenzie v. Fed. Express Corp.*, 2012 U.S. Dist. LEXIS 103666, at *9 (C.D. Cal. July 2, 2012) ("The central factor relating to the 'risk, expense, complexity, and likely duration'" analysis "is the expense of litigation."). Plus, "[e]ven if the class were ultimately to prevail … trial and appeals would significantly delay class members' ability to obtain compensation." *Schaffer v. Litton Loan Servicing, LP*, 2012 U.S. Dist. LEXIS 189830, at *36 (C.D. Cal. Nov. 13, 2012); *see Bravo v. Gale Triangle, Inc.*, 2017 U.S. Dist. LEXIS 77714, at *29 (C.D. Cal. Feb. 16, 2017) ("The Court finds that '[i]n light of the risks and costs of continued litigation, the immediate rewards to class members are preferable.'"). So, "[t]he value of any judgment would therefore be discounted by the delay the class members would face in actually obtaining that judgment." *Tait v. BSH Home Appliances Corp.*, 2015 U.S. Dist. LEXIS 98546, at *21 (C.D. Cal. July 27, 2015). "By contrast, the proposed settlement provides certain, timely, and substantial relief." *Id.*; *see In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015) ("Immediate receipt of money through settlement, even if lower than what could potentially be achieved through ultimate success on the merits, has value to a class, especially when compared to risky and costly continued litigation.").

In short, continued litigation would present a significant risk of the Class recovering nothing; and a certainty of increased expenses and delay. And Class Counsel, who have significant experience with consumer class actions, and fake discount cases in

11

particular, weighed all of this—while continuing to recognize the strength of the case—in negotiating this Settlement. Franzini Decl. ¶24; *see In re LinkedIn*, 309 F.R.D. 573, at 586 (courts may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiffs likelihood of recovery.").

> **2.    Class Counsel thoroughly investigated the claims, conducted significant informal discovery, and was well-informed during negotiations.**

"When assessing a settlement[,] courts focus on whether the 'parties have sufficient information to make an informed decision about settlement.'" *Ronquillo-Griffin v. TransUnion Rental Screening Sols., Inc.*, 2019 U.S. Dist. LEXIS 79021, at *21 (S.D. Cal. May 9, 2019). Here, Class Counsel thoroughly investigated the claims and relied on their own substantial experience, as well as significant informal discovery, in making decisions about settlement.

Before even filing this case, Class Counsel conducted a thorough investigation into Defendant's sales and pricing. Counsel gathered, reviewed, and analyzed years of archival data concerning the frequency of Defendant's sales and the legitimacy of Defendant's listed prices. Franzini Decl. ¶10. And, to determine whether Defendant's deception regarding sales and pricing policies was on going, Counsel conducted additional daily monitoring of Defendant's website for months after filing. *Id.* In addition, Counsel undertook significant legal research and analysis to fully understand the strength of Plaintiffs' claims and the potential defenses available to Defendant. *Id.*; *see In re LinkedIn*, 309 F.R.D. 573, at 588 ("Formal discovery is not a requirement for final settlement approval; '[r]ather, the court's focus is on whether the parties carefully investigated the claims before reaching a resolution.'"). Plus, Class Counsel has special expertise in fake discount class actions, and drew on that knowledge and experience to evaluate the claims and defenses in this case. *Id.* ¶¶ 7-9.

Prior to mediation, the Parties exchanged substantial informal discovery, including

detailed data concerning Defendant's sales and financials, and information about Plaintiffs' purchases. Franzini Decl. ¶12; *see Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 257 (N.D. Cal. 2015) ("In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, 'formal discovery is not a necessary ticket to the bargaining table.'"); *Hashemi v. Bosley, Inc.*, 2022 U.S. Dist. LEXIS 210946, at *14 (C.D. Cal. Nov. 21, 2022) (while "no formal discovery took place," the parties "did conduct informal pre-mediation discovery which generally supports final approval."). Class Counsel thoroughly analyzed the produced documents, and engaged an expert to help evaluate Defendant's data. Franzini Decl. ¶12. The Parties also postponed the initial mediation to exchange more information and to ensure that Class Counsel had enough time and all the information needed to make an informed decision about settlement. *Id.* ¶13. And, Class Counsel attended a pre-mediation presentation by Defendant's counsel concerning Defendant's sales and financial information before ultimately attending the mediation which led to the resolution of the case. *Id.*

So, in sum, Class Counsel gathered and considered all necessary information to make an informed decision regarding settlement. Plus, "[t]he parties' use of mediation," which took place after significant informal discovery, "and their reliance on the mediator's proposal in settling demonstrate that the parties considered a neutral opinion in evaluating the strength of their arguments," and this too "weigh[s] in favor of settlement." *Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014); *see* Franzini Decl. ¶14 (explaining that the Parties accepted a mediator's proposal after substantial negotiation).

### 3. The Settlement will provide outstanding relief—worth approximately $10 million in total—to the Settlement Class.

In considering whether to grant final approval, "[t]he relief that the settlement is expected to provide to class members is a central concern." *Broomfield v. Craft Brew All, Inc.*, 2020 U.S. Dist. LEXIS 74801 at *26 (N.D. Cal. Feb. 5, 2020). Here, as explained above,

13

1    the Settlement provides approximately $10,000,000 in benefits to Settlement Class

2    Members—approximately $8,500,000 in direct benefits, and an additional $1,497,500 to

3    fund litigation and administration costs, attorneys' fees, and incentive awards. §II above;

4    *see Broomfield*, 2020 U.S. Dist. LEXIS 74801, at *80 (to calculate the value of a settlement

5    for purposes of evaluating fees, "the Ninth Circuit and courts in this district have included

6    attorneys' fees, settlement administration costs, and litigation expenses" in the total value);

7    Motion for Attorneys' Fees and Incentive Awards at 6-9 (discussing the value of the

8    Settlement).

9          Under the Agreement, every Class Member will get 12% of their purchase price

10   back, and the average payment will be approximately $75. Franzini Decl. ¶19. And,

11   because the Settlement creates a separate fund for the payment of administration costs,

12   attorneys' fees and costs, and incentive awards, each Class Member will receive the full

13   12% to which they are entitled.  Franzini Decl. ¶16. This is an outstanding recovery for

14   Class Members, and is far more than consumers typically recover in similar cases. *See, e.g.*,

15   *Baker v. Seaworld Entm't, Inc.*, 2020 U.S. Dist. LEXIS 131109, at *32 (S.D. Cal. July 24,

16   2020) (noting that a recovery amounting to "14% of the maximum amount the Class

17   could have recovered" is "higher than 'the typical recovery in similar court-approved

18   settlements by considerable margin'"); *Chester v. TJX Cos.*, 2017 U.S. Dist. LEXIS 201121,

19   at *21 (C.D. Cal. Dec. 5, 2017) (preliminarily approving an $8,500,000 settlement in a fake

20   discount case with an average award of approximately $37.00, assuming a 2% claims rate);

21   *Jacobo v. Ross Stores, Inc.*, 2018 U.S. Dist. LEXIS 248252, at *25 (C.D. Cal. Dec. 7, 2018)

22   (approving an $4,854,000 settlement in a fake discount case with an average award of

23   approximately $16.70, assuming a 2% claims rate).

24         Importantly, this is not a "claims made" settlement with a "hypothetical …

25   settlement cap" that will only need to be paid out if everybody files a claim. *Cf. Lowery v.

26   Rhapsody Int'l, Inc.*, 75 F.4th 985, 991 (9th Cir. 2023) (settlement was nominally valued at

27   $20 million, but this was merely a hypothetical cap that would only be paid out if every

28   class member made a claim). Rather, 100% of the $8,500,000 in direct compensation will

be actually paid to Class Members, either in cash or store credit. And the remainder will
be used to pay for the fees and costs that made the Settlement possible in the first place.
None of it will revert to Defendant. Agreement, §§III(H)(4), VIII. Plus, the Settlement is
structured so that *every* Class Member will receive payment automatically, even if they do
not make a claim. Thus, the Settlement provides for more comprehensive relief than the
vast majority of similar class action settlements, which require Class Members to file a
claim to receive relief. *See e.g.*, *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 332 (C.D. Cal.
2016) (preliminarily approving a fake discount settlement where consumers had to file a
claim form to receive a settlement benefit); *Chester*, 2017 U.S. Dist. LEXIS 201121, at *21
(C.D. Cal. Dec. 5, 2017) (same); *Jacobo*, 2018 U.S. Dist. LEXIS 248252, at *25 (same).
Such an excellent overall and per-Class Member recovery strongly supports final approval.
*See Medeiros v. HSBC Card Servs.*, 2017 U.S. Dist. LEXIS 178484, at *14 (C.D. Cal. Oct. 23,
2017) ("Because the amount offered in settlement compares favorably to other CIPA class
action settlements, the Court finds that the settlement in this case is fair, adequate, and
reasonable"); *id.* at *12-13 (final approval granted where plaintiffs "secured a
total settlement amount of $13,000,000.00," which "amount[ed] to an average gross per-
class-member recovery of approximately $7.54" as compared to other similar "cases in
which courts have approved settlements with far lower average gross per-class-member
recoveries than the settlement here—between $0.75 and $6.98 per class member."); *In re
LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 588 (N.D. Cal. 2015) (granting final approval
where "the amount of the agreed-upon settlement fund compare[d] favorably to that of
other similar class actions.").

Nor, as the Court found in granting preliminary approval, is this "merely a 'coupon'
settlement." Preliminary Approval Order, 12; *see In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934, 951 (9th Cir. 2015) (distinguishing settlements involving gift cards or store
credit like the one here from "coupon" settlements subject to CAFA). Every Class
Member can receive their share of the settlement in cash, without decreasing the amount
they receive by a cent. Agreement, §§III(E)(4), VIII. And those who elect to receive store

15

credit will not merely get "the chance to receive a percentage discount on a purchase of a specific item or set of items." *In re Online DVD-Rental* at 951 (describing typical coupon settlements). They will get store credits with a specific dollar value, that "can be used for any products on [Defendant's website]," "do not expire," and—because Defendant sells numerous products for less than $75, *see* Franzini Decl. ¶19—"do not require consumers to spend their own money." *In re Online DVD-Rental* at 951. So under controlling law, they are not "coupons" under CAFA. *Id.* (holding that a settlement providing for the distribution of store credit gift cards with largely the same properties as the store credit here was not a coupon settlement and was not subject to CAFA); *see, e.g.*, *Hendricks v. Ference*, 754 F. App'x 510, 512 (9th Cir. 2018) (vouchers for purchasing Starkist Tuna were "not a form of coupon relief under [CAFA]" because the vouchers "did not expire" and were transferrable, "could be used at a wide variety of stores," and had "sufficient value that class members could use them to purchase tuna without additional out-of-pocket expense"); *Cody v. SoulCycle Inc.*, 2017 U.S. Dist. LEXIS 163965, at *19 (C.D. Cal. Oct. 3, 2017) (noting that "there is a crucial difference between coupons and vouchers" and holding that credits for SoulCycle classes are not coupons subject to CAFA*); Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1262 n.14 (C.D. Cal. 2016) (J.C. Penney store credits were not coupons under CAFA).

Finally, "to the extent that class members were unsatisfied with the settlement, they were provided the opportunity to opt out if they desired to seek greater compensation." *Klee v. Nissan N. Am., Inc.*, 2015 U.S. Dist. LEXIS 88270, at *25 (C.D. Cal. July 7, 2015). But, as detailed below, not a single Class Member objected to or opted out of the Settlement. *See* §IV(B)(5) below (discussing the lack of any opt-outs or objections). This "suggests that the amount [provided by the Settlement] is fair and adequate." *Bell v. Consumer Cellular, Inc.*, 2017 U.S. Dist. LEXIS 95401, at *16 (D. Or. June 21, 2017).

1      **4.      Class Counsel has substantial experience with class litigation,**

2              **and Class Counsel and the Class Representatives fairly and**

3              **adequately represented the Class's interests.**

4          In determining whether to grant final approval, courts consider whether class

5   counsel and the class representatives adequately represented class interests and, if so, give

6   significant weight to Class Counsel's recommendation. *See Felix v. WM. Bolthouse Farms,*

7   *Inc.*, 2020 U.S. Dist. LEXIS 78280, at *15, *25 (E.D. Cal. May 4, 2020) (finding that class

8   counsel adequately represented the class and "diligently and aggressively pursued" the

9   action, and holding that "the views of counsel support[ed] final approval.").

10         Throughout the litigation and settlement negotiations, Counsel and the Class

11  Representatives represented Class interests more than adequately. And there are no

12  indications of fraud or collusion in relation to the Settlement. The Settlement was reached

13  after arduous arms-length negotiations conducted through a neutral mediator. *See*

14  Preliminary Approval Order at 10 ("[T]he Settlement Agreement was reached after arms-

15  length negotiations between counsel for the parties"). The ultimate agreement resulted

16  from a mediator's proposal. *See Ebarle v. Lifelock, Inc.*, 2016 U.S. Dist. LEXIS 6698 at *18

17  (N.D. Cal. Jan. 20, 2016) (finding that acceptance of a mediator's proposal following

18  mediation sessions "strongly suggests the absence of collusion or bad faith"). And, this

19  Settlement does not raise any of the "subtle signs" of collusion that the Ninth Circuit has

20  been warned about, namely (1) "'when counsel receive a disproportionate distribution of

21  the settlement, or when the class receives no monetary distribution but class counsel are

22  amply rewarded;' (2) 'clear sailing' arrangements; and (3) 'when the parties arrange for fees

23  not awarded to revert to defendants rather than be added to the class fund.'" *In re Apple*

24  *Inc. Device Performance Litig.*, 2023 U.S. Dist. LEXIS 27892, at *49-50 (N.D. Cal. Feb. 17,

25  2023). Indeed, Class Counsel will not receive a "disproportionate distribution" from the

26  Settlement Fund, or be "amply rewarded" while the class receives no monetary

27  distribution. Instead, as detailed in Counsel's Fees Motion, Counsel seeks costs and fees

28  of less than 15% of the Settlement Fund—far less than the presumptively reasonable 25%

benchmark. *See generally* Motion for Attorneys' Fees and Incentive Awards; *see In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award"); *see* §IV(B)(5) (explaining that no Class Members objected to Counsels' fee request). The Parties did not negotiate any "clear sailing" provision: Defendant was expressly entitled to "challenge or oppose the amount of fees requested by Class Counsel" (though it ultimately chose not to do so). Agreement §III(H)(1). And, none of the benefits under the Settlement will revert to Defendant. The Credit Benefits and Cash Benefits will be fully distributed to Class Members. *Id.* §§I(F); III(E). The separate fund to pay for costs, fees, and incentive awards will be used to pay for costs, fees, and incentive awards. And, if there is any money left over in that fund, that money will be distributed to Class Members too. *Id.* §III(H)(4).[6]

Here, Class Counsel has substantial experience with consumer class actions, and special expertise in fake discount cases in particular. See §IV(B)(2) above; Franzini Decl. ¶¶ 5, 7-9. And, based on this experience, Class Counsel unequivocally recommend this Settlement as an excellent outcome for the Settlement Class. Franzini Decl. ¶22. Given "Class Counsel's experience in prosecuting consumer class actions, including cases involving [fake discounts], Class Counsel's recommendations are presumed to be reasonable" and are entitled to significant weight. *Testone v. Barlean's Organic Oils, LLC*, 2023 U.S. Dist. LEXIS 37308, at *10 (S.D. Cal. Mar. 6, 2023); *see In re Apple Inc. Device Performance Litig.*, 2023 U.S. Dist. LEXIS 27892, at *47 (N.D. Cal. Feb. 17, 2023) ("[T]he experience and views of counsel … weigh in favor of approving settlement" where "Class Counsel has significant experience with consumer class-actions."); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 U.S. Dist. LEXIS 129939, at *59 (N.D. Cal. July 22, 2020) ("[T]he views of Plaintiffs' counsel, who are experienced in litigating and settling

---

[6] For ease of administration and to avoid delaying payment or making a second tiny pro rata distribution to Class Members, the value of any un-cashed checks will be sent by the Settlement Administrator to the National Consumer Law Center rather than distributed to Class Members. Agreement §VIII. The amounts distributed in this manner are expected to be *de minimis* and in any event will not revert back to Defendant.

complex consumer class actions, weigh in favor of final approval."); *Free Range Content, Inc. v. Google, LLC,* 2019 U.S. Dist. LEXIS 47380, at *22 (N.D. Cal. Mar. 21, 2019) ("Class counsel's views that the settlement is a good one is entitled to significant weight."); *Razo v. AT&T Mobility Servs.,* 2023 U.S. Dist. LEXIS 72755, at *48 (E.D. Cal. Apr. 26, 2023) ("[O]pinions of counsel are entitled to significant weight and support final approval of the Settlement").

### 5.    The Class's reaction to the settlement was overwhelmingly positive.

"In evaluating the fairness, adequacy, and reasonableness of settlement, courts also consider the reaction of the class to the settlement." *Judson v. Goldco Direct, LLC,* 2021 U.S. Dist. LEXIS 258173, at *15 (C.D. Cal. June 11, 2021).

Here, the reaction of the two Class Representatives was very positive: both strongly favor the Settlement and believe that it is in the best interests of the Class. Fernandez Decl. ¶7; Montes De Oca Decl. ¶7; *see Vasquez v. Coast Valley Roofing, Inc.,* 266 F.R.D. 482, 490 (E.D. Cal. 2010) ("Class representatives' opinions of the settlement are especially important because '[t]he representatives' views may be important in shaping the agreement … [and] representatives may have a better understanding of the case than most members of the class.").

The reaction of absent class members was also overwhelmingly positive. "To gauge the reaction of other class members, it is appropriate to evaluate the number of requests for exclusion, as well as the objections submitted." *Asghari v. Volkswagen Grp. of Am.,* Inc., 2015 U.S. Dist. LEXIS 188824, at *68 (C.D. Cal. May 29, 2015). "Courts have repeatedly recognized that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *De Leon v. Ricoh USA, Inc.,* 2020 U.S. Dist. LEXIS 56285, at *34 (N.D. Cal. Mar. 31, 2020).

Here, not a single Class Member opted out of the settlement, and no Class Members objected, either to the Settlement's terms or to Class Counsel's fees and

incentive awards request. Lorenzano Decl. ¶19-20. This reaction shows that the Class—which consists of more than 100,000 people—overwhelming approves the Settlement. *See Shvager*, 2014 U.S. Dist. LEXIS 200808, at *33 ("The fact that not one class member opted out or filed objections — including the almost 1,500 class members who received direct notice of the settlement — indicates that the class overwhelmingly approves the settlement."); *Bravo*, 2017 U.S. Dist. LEXIS 77714, at *36 (because there was an "absence of any substantive objections to the proposed settlement," there was a "strong presumption that the settlement [was] fair," and this "strongly favor[ed] approval."); *Schneider*, 336 F.R.D. 588, 599 ("Given the absence of any well-founded objections and only one request for exclusion, the Class response weighs strongly in favor of final approval."). Courts often approve Settlements that are met with exclusions and objections—so the absence of any here especially favors approval. *See e.g., Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming approval of settlement where "45 of the approximately 90,000 notified class members objected to the settlement," and 500 opted-out); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (class reaction was "overwhelming positive" where 4.86% of the class opted out). And this outcome is particularly notable because the notice plan was robust and effective—as explained above, almost every Class Member received direct notice either by email or mail. §III(A). The distributed notice forms provided the substantive details of the Settlement (and Counsels' fees request), and provided instructions on how to object or opt-out. *Id.* Still, not a single Class Member chose to do so.

That the Class approves of the Settlement is also shown by the high claims rate. 7.5% of the Class has thus far filed a claim form to receive their Settlement award in cash. §III(B). And this rate will likely grow before the January 23 claims deadline. Already, this is a higher-than-average claims rate (especially since Class Members do not need to file a claim to receive relief), and further shows that Class Members approve of and chose to engage with the Settlement. *See Munday v. Navy Fed. Credit Union*, 2016 U.S. Dist. LEXIS 193973, at *23 n.1 (C.D. Cal. Sep. 15, 2016) ("[D]istrict courts have recognized that '[t]he

prevailing rule of thumb with respect to consumer class actions is [a claims rate of] 3-5 percent.'"); *see e.g.*, *Schneider*, 336 F.R.D. at 599 ("Here, the 0.83% claims rate (which represents the estimated size of the targeted population of potential class members compared to the actual claim submissions) is on par with other consumer cases."); *In re Online DVD*, 779 F.3d at 944-45 (affirming approval of settlement where 1,183,444 of 35 million class members—less than 3.4%—filed claims); *Taylor v. Shutterfly, Inc.*, 2021 U.S. Dist. LEXIS 237069, at *21 (N.D. Cal. Dec. 7, 2021) (approving Settlement with an "overwhelmingly positive [class] response" where, out of 98,000 Class Members, there were three opt-outs and a cash claims rate of approximately 2.5%).

In short, the Class reaction was overwhelmingly positive and strongly supports final approval.

…

Each of the factors considered by courts in determining whether to approve a proposed settlement strongly weighs in favor of final approval. The Court should therefore grant final approval here.[7]

## V.    Conclusion.

For the foregoing reasons, the Motion should be granted.

---

[7] Courts also consider participation by government entities. *See Staton*, 327 F.3d at 959 (listing relevant factors). Here, this factor is largely "inapplicable and neutral because no government entity participated in the case." *Shvager*, 2014 U.S. Dist. LEXIS 200808, at *31. However, as explained above, the Parties, through the Settlement Administrator, provided notice of the Settlement to government entities as required by CAFA. *See* §III(D) above. And despite this notice, no government entities "objected to the settlement or submitted adverse comments concerning it." *Shvager*, 2014 U.S. Dist. LEXIS 200808, at *31. Thus, this factor also favors a conclusion "that the settlement is fair and reasonable." *Id.*; *see Browning v. Yahoo! Inc.*, 2007 U.S. Dist. LEXIS 86266, at *37 (N.D. Cal. Nov. 16, 2007) ("Because numerous governmental agencies . . . were given notice of the settlement and have not objected, this factor weighs in favor of the settlement").

1     Dated: January 8, 2024          Respectfully submitted,

2                                 By: */s/ Simon Franzini*

3                                 Simon Franzini (Cal. Bar No. 287631)

                                simon@dovel.com

4                                 Grace Bennett (Cal. Bar No. 345948)

5                                 grace@dovel.com

                                DOVEL & LUNER, LLP

6                                 201 Santa Monica Blvd., Suite 600

7                                 Santa Monica, California 90401

                                Telephone: (310) 656-7066

8                                 Facsimile: (310) 656-7069

9                                 *Attorneys for Plaintiffs*