JS-6

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT BARR, ELISA MONTES DE OCA, and GABRIELA FERNANDEZ, each individually and on behalf of all others similarly situated,<br><br>                            Plaintiffs,<br><br>          v.<br><br>SELECTBLINDS LLC,<br><br>                            Defendant. | Case No. 2:22-cv-08326-SPG-PD<br><br>**ORDER GRANTING PLAINTIFF'S MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND COSTS [ECF NOS. 53, 54]** |

Before the Court are Plaintiffs Elisa Montes de Oca and Gabriela Fernandez unopposed motions for final approval of class action settlement and for attorneys' fees and costs. (ECF Nos. 53, 54). Having considered the submissions of the parties, the relevant law, the record in this case, and the arguments of counsel during the final fairness hearing, the Court hereby **GRANTS** Plaintiffs' Motions.

## I.    BACKGROUND

The Court previously set forth Plaintiffs' allegations in its order granting preliminary approval of the class action settlement, which this Court incorporates by reference (the "Preliminary Approval Order").  (ECF No. 52 ("Prelim. Order") at 2).

The First Amended Complaint ("FAC") alleges that Plaintiffs both purchased blinds from Defendant's website, which advertised that the products they purchased were on sale for a limited-time.  (ECF No. 31 ("FAC") ¶¶ 52–53)).  In this advertising, the website listed a "regular price" alongside the "discounted price."  (*Id.*).  Plaintiffs allege that they, along with other reasonable customers, understood Defendant's advertising to mean that Plaintiffs were receiving a special discount and that, without that discount, the Products would cost the "regular price."  (*Id.* ¶¶ 51–54).  However, Plaintiffs learned that Defendant's products are always advertised as on sale.  (*Id.* ¶ 55).  Therefore, the "regular" prices are never charged and are not accurate.  (*Id.* ¶ 23).  Plaintiffs claim that, "[b]y listing fake regular prices and fake discounts, Defendant misleads consumers into believing that they are getting a good deal."  (*Id.* ¶ 41)

On October 4, 2022, Plaintiff Roger Barr filed this case in the Superior Court of the State of California, County of Ventura.  (ECF No. 1-2).  On November 14, 2022, Defendant removed the case to federal court.  (ECF No. 1).  On January 4, 2023, the parties stipulated that the Court stay the case while the parties engaged in mediation, which the Court granted on January 5, 2023.  (ECF Nos. 23, 24).  On June 16, 2023, Defendant agreed to the filing of an amended complaint, in which Plaintiffs Fernandez and Montes de Oca were added as Plaintiffs.  (ECF Nos. 31, 33).  The FAC asserts six causes of action against Defendant: (1) violation of California's False Advertising Law, (FAC ¶¶ 77–88); (2) violation of California's Consumer Legal Remedies Act, (*id.* ¶¶ 89–106); (3) violation of California's Unfair Competition Law, (*id.* ¶¶ 107–22); (4) breach of contract, (*id.* ¶¶ 123–31); (5) breach of express warranty, (*id.* ¶¶ 132–41); and (6) quasi-contract/unjust enrichment, (*id.* ¶¶ 142–46).

The parties first began discussing settlement in December 2022 and attended a full day mediation before JAMS mediator Bruce Friedman on June 20, 2023. (ECF No. 54-1 ¶¶ 12, 14). The parties ultimately filed their notice of settlement with the Court on July 28, 2023. (ECF No. 41). On September 21, 2023, Plaintiffs[1] submitted an unopposed motion to certify the class for the purposes of settlement and to preliminarily approve the class action settlement, (ECF Nos. 42, 45), which the Court granted in full on October 25, 2023, (ECF No. 52). Specifically, the Court granted Plaintiffs' motion to: (1) conditionally certify the class as defined in the settlement agreement; (2) preliminarily approve the parties' Settlement; (3) appoint Angeion Group as the Settlement Administrator; (4) appoint Plaintiffs' counsel, Dovel & Luner, as class counsel ("Class Counsel"); and (5) appoint Plaintiffs Elisa Montes De Oca and Gabriela Fernandez as class representatives. *See* (*id.* at 16). On December 11, 2023, Plaintiffs submitted an unopposed motion for attorneys' fees and costs, and incentive awards. (ECF No. 53 ("Mot. Fees")). On January 8, 2024, Plaintiffs submitted an unopposed motion for final approval of the class action settlement. (ECF No. 54 ("Mot.")).

## A.    The Settlement Agreement

The parties have not re-submitted the Settlement Agreement or represented that the Settlement Agreement changed in any respect. While the Court's Order granting preliminary approval set forth the relevant terms of the Settlement Agreement, (Prelim. Order at 2–4), the Court reiterates the key provisions here.

### 1.    Class Definition

The Settlement Agreement defines the putative class as "all individual consumers who, during the Class Period, purchased one or more products from the SelectBlinds.com website for personal, family, or household purposes while residing in California." (ECF

---

[1] On September 29, 2023, Plaintiffs filed a notice of dismissal as to Roger Barr pursuant to a settlement he reached on an individual basis with Defendant. (ECF No. 44). The notice of dismissal represented that the claims dismissed with prejudice on behalf of Plaintiff Barr "were not released in the Class Settlement because Mr. Barr is not a class member." (*Id.* at 2).

No. 42-1 ("Settlement Agreement") § I(DD)).  The Settlement Agreement defines the "Class Period" as "October 4, 2019, through December 31, 2022."  (*Id.* § I(I)).

### 2.    Requested Relief

The Settlement Agreement directs Defendant to pay approximately $10,000,000.00 total, inclusive of benefits, to the Settlement Class; notice and administrative costs; incentive awards to the named Plaintiffs if approved by the Court; and any award of attorneys' fees, costs, and expenses approved by the Court.  (Mot. at 10; Settlement Agreement §§ III(E)(1), III(H)(1)).  Of that total amount, approximately $8,500,000.00 will be paid to the class members as direct benefits.  (*Id.* § III(E)(1)-(4)).  Class members will receive their portion of the benefits in one of two ways.  (*Id.*).  If a class member chooses to file a claim, they will receive a cash payment equal to 12% of the total amount of purchases from SelectBlinds.com while they were a California resident during the Class Period.  (*Id.*).  Alternatively, if the class member chooses not to file a claim, they will automatically receive the 12% of total qualifying purchases in the form of store credit that will not expire.  (*Id.*).  On average, each Class Member will receive approximately $75 in cash or credit, though the number will vary depending on the total value of their earlier purchases.  (ECF No. 42-2 ¶ 14).  The remaining $1,497,500.00 will be paid by Defendant to cover notice and administrative costs, incentive awards, and attorneys' fees and costs.  (Settlement Agreement § III(H)(1)).

### 3.    Attorneys' Fees and Costs

The Court appointed Dovel & Luner, LLP as Class Counsel in its order granting preliminary approval ("Preliminary Approval Order").  *See* (Settlement Agreement § I(H)).  The Settlement Agreement allows Class Counsel to apply to the Court for reasonable attorneys' fees and expenses not to exceed $1,497,500.  (Settlement Agreement § III(H)(1)).  This amounts to less than 15% of the total settlement value, however, it amounts to the full portion of the settlement allotted for fees and costs, as well as notice and administrative costs.  In Plaintiffs' Motion seeking attorneys' fees, Plaintiffs seek $1,415,790.00 in attorneys' fees and $11,719.00 in costs.  (Mot. Fees at 2).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

4.    Release of Claims

The Settlement Agreement requires class members to release:

all claims, demands, actions, and causes of action of any kind or nature
whatsoever, whether at law or equity, arising under federal, state, or local law,
that Plaintiffs or Settlement Class Members ever had, now have, or may have
. . . on the basis of or arising from the Discharged Parties' representations,
advertising, marketing and/or sales on the Defendant's website,
www.SelectBlinds.com, during the Class Period, which were alleged in the
operative complaint, or which arise from the same facts and claims alleged in
the operative complaint in the Action.

(Settlement Agreement § III(D)(1)).  The released claims also include "all claims that have
or could have been asserted by any or on behalf of any Settlement Class Member in this
Action and that are based on or arise out of the same factual predicate as the Action." (*Id.*).

## II.    LEGAL STANDARD

### A.    Final Approval of Class Certification

Parties seeking class certification for settlement purposes must satisfy the
requirements of Federal Rule of Civil Procedure 23.  *Amchem Prods., Inc. v. Windsor*, 521
U.S. 591, 620–21 (1997).  The threshold task when deciding whether to grant final approval
of a class action settlement is to "ascertain whether the proposed settlement satisfies the
requirements of Fed. R. Civ. P. 23(a)," which are: "(1) numerosity, (2) commonality, (3)
typicality, and (4) adequacy of representation." *Hanlon v. Chrysler Corp*., 150 F.3d 1011,
1019 (9th Cir. 1998).  In considering such a request, the court must give the Rule 23
certification factors "undiluted, even heightened, attention in the settlement context."
*Amchem Prods*, 521 U.S. at 620.

### B.    Final Approval of Class Settlement

Once a class is certified, Rule 23(e) provides that "[t]he claims, issues, or defenses
of a certified class—or a class proposed to be certified for purposes of settlement—may be
settled . . .  only with the court's approval." Fed. R. Civ. P. 23(e). "Courts reviewing class

action settlements must ensure that unnamed class members are protected from unjust or unfair settlements affecting their rights, while also accounting for the strong judicial policy that favors settlements[.]" *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) (internal quotation, alteration marks, and citation omitted). A district court must examine the settlement for "overall fairness[.]" *In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539, 569 (9th Cir. 2019) (en banc). Accordingly, before approving a class action settlement under Rule 23, a district court must conclude that the settlement is "fundamentally fair, adequate, and reasonable." *Id.*; *Hanlon*, 150 F.3d at 1026. In the Ninth Circuit, there is a "strong judicial policy that favors settlements[.]" *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (quoting *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir.2008)).

## III.    CLASS CERTIFICATION

Final approval of a class action settlement requires an assessment of whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b). *Hanlon*, 150 F.3d at 1019–22. Because no facts that would affect these requirements have changed since the Court preliminarily approved the class on October 25, 2023, this order incorporates by reference the Court's prior analysis under Rules 23(a) and (b) as set forth in the order granting preliminary approval. *See* (Prelim. Order at 5–9); *see also Smith v. Keurig Green Mountain, Inc.*, No. 18-CV-06690-HSG, 2023 WL 2250264, at *4 (N.D. Cal. Feb. 27, 2023).

## IV.    FAIRNESS DETERMINATION

Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). "Approval under [Rule] 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004). Final

approval of a class action settlement may only be granted if the Court, after "evaluat[ing] the fairness of a settlement as a whole," finds that the settlement is "fair, reasonable, and adequate . . . ."  *Lane v. Facebook, Inc.*, 696 F.3d 811, 818–20 (9th Cir. 2012) (quoting Fed. R. Civ. P. 23(e)(2)).

Congress and the Supreme Court amended Rule 23(e) in 2018 "to set forth specific factors to consider in determining whether a settlement is 'fair, reasonable, and adequate.'" *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021).  Specifically, Rule 23(e)(2) provides the following:

> If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> > (A) the class representatives and class counsel have adequately represented the class;
> >
> > (B) the proposal was negotiated at arm's length;
> >
> > (C) the relief provided for the class is adequate, taking into account:
> >
> > > (i) the costs, risks, and delay of trial and appeal;
> > >
> > > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > >
> > > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> > >
> > > (iv) any agreement required to be identified under Rule 23(e)(3); and
> >
> > (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *see also Briseño*, 998 F.3d at 1023–24.  Additionally, in the Ninth Circuit, "a district court examining whether a proposed settlement comports with Rule 23(e)(2) is guided by the following non-exhaustive list of factors, "the relative degree of importance" of which will depend on the "unique circumstances presented by each

indvidual case." *Officers for Just. v. Civil Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).  These factors are:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021) (quoting *In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)) (the "*Churchill* factors"); *see also Briseño*, 998 F.3d at 1025–26 (recognizing that while most factors "fall within the ambit of the revised Rule 23(e)," "Congress provided district courts with new instructions—such as analyzing the 'terms of the settlement' and 'terms of any proposed award of attorney's fees'—that require them to go beyond our precedent" (citation omitted)).

Additionally, particularly when there is a settlement prior to formal class certification, a court must ensure that the parties reached their settlement through arms-length negotiation and that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties . . . ." *Officers for Just.*, 688 F.2d at 625; *see also In re Bluetooth,* 654 F.3d at 948.

## A.    Procedural Fairness

When, as here, a settlement agreement has been negotiated before a class has been certified, the court must also "undertake an additional search for 'more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations.'" *In re Volkswagen*, 895 F.3d 597, 610–11 (9th Cir. 2018) (quoting *In Re Bluetooth*, 654 F.3d at 946–47).  Three "oft-cited 'red flags'" of unfair settlements are: (1) class counsel receiving a disproportionate amount of the settlement or being "amply rewarded" when class members receive no monetary relief; (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees

separate and apart from class funds"; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Botonis v. Bimbo Bakeries USA, Inc.*, No. 2:22-CV-01453-DJC-DB, 2024 WL 100545, at *7 (E.D. Cal. Jan. 9, 2024); *see also In re Bluetooth*, 654 F.3d at 947.

Considering the Settlement Agreement, the Court finds Settlement Agreement is procedurally fair. First, the Settlement Agreement does not provide a disproportionate distribution of the settlement. The Settlement Agreement provides for Class Counsel to seek up to $1,497,500.00 in fees, which amounts to less than 15% of the total settlement value. (Settlement Agreement § III(H)(1)); ECF No. 42-2 ¶ 16). "The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark." *Razo v. AT&T Mobility Servs., LLC*, No. 1:20-CV-0172 JLT HBK, 2022 WL 4586229, at *10 (E.D. Cal. Sept. 29, 2022) (citing *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)); *cf. Lim v. Transforce, Inc.*, No. LA CV19-04390 JAK (AGRx), 2022 WL 17253907, at *12 (C.D. Cal. Nov. 15, 2022) ("The amount of attorney's fees and costs permitted in the Settlement Agreement – 33.33% of the Gross Settlement Amount – is substantial but not so disproportionate as to suggest collusion."). Because the proportion of the Settlement reserved for attorneys' fees falls below the lower end of the "typical range of acceptable attorneys' fees in the Ninth Circuit," the first *Bluetooth* factor weighs against a finding of collusion. *See Razo*, 2022 WL 4586229, at *10.

However, the Settlement Agreement contains a form of a "clear sailing" arrangement. A settlement agreement contains a "clear-sailing arrangement" when "the defendant agrees not to challenge a request for an agreed-upon attorney's fee," but the "mere presence of such an agreement is not 'an independent basis for withholding settlement approval.'" *Martinez v. Helzberg's Diamond Shops*, Case No. ED CV 20-1085 PSG (SHKx), 2021 WL 9181893, at *7 (C.D. Cal. Sept. 24, 2021) (quoting *Briseño v. Henderson*, 998 F.3d at 1027). Here, the Settlement Agreement provides:

> [Defendant] will not dispute that under this [Settlement] Agreement, Class Counsel is entitled to receive up to $1,497,500 in attorneys' fees, costs, and expenses if approved by the Court . . . [but] Defendant *may* challenge or oppose the amount of fees requested by Class Counsel, (i.e., may ask the Court to award Class Counsel less than the amount requested) . . . .

(Settlement Agreement § III(H)(1) (emphasis added)).  Because Defendant reserved the right to challenge the fees requested by Class Counsel, this arrangement does not imply the full collusive effect of when defendants agree to forego opposing any challenge to an attorneys' fee request. *See Briseño*, 998 F.3d at 1022–23, 1027–28.

Finally, the Settlement Agreement provides that "any remaining amounts after payment of Settlement Costs shall be divided and distributed to Settlement Class Members in proportion to the Settlement Award due to them under this Agreement, and *will not revert* to Defendant." (Settlement Agreement § III(H)(4) (emphasis added)). When a settlement agreement contains a "kicker" or "reverter" clause that returns unawarded fees to the defendant, rather than the class, it could indicate that the settlement is a result of collusive unfair conduct by class counsel. *See Briseño*, 998 F.3d at 1023. Thus, because this Agreement does not contain any kicker or reverter clauses, this factor weighs in favor of finding that the settlement is the result of serious, informed, and non-collusive negotiations.

Based on the above factors, the Court finds that the proposed settlement appears to be the product of serious, informed, non-collusive negotiations. This finding weighs in favor of final approval of the Settlement.

## B.    Substantive Fairness

In determining whether the proposed Settlement Agreement is fair, reasonable, and adequate, the Court addresses each of the factors set forth by Rule 23(e)(2) and Ninth Circuit precedent. *See Briseño*, 998 F.3d at 1025–26 (recognizing that while most Ninth Circuit factors "fall within the ambit of the revised Rule 23(e)," "Congress provided district

courts with new instructions—such as analyzing the 'terms of the settlement' and 'terms of any proposed award of attorney's fees'—that require them to go beyond our precedent").

1. Rule 23(e)(2)(A): Adequacy of Representation by Class Representatives and Class Counsel

The first Rule 23(e) factor requires that the class representatives and class counsel have adequately represented the class. Fed. R. Civ. P. 23(e)(2)(A). Class representatives are adequate if the named plaintiff and counsel do not have any conflicts of interest with other class members and will prosecute the action vigorously on behalf of the class. *Hanlon*, 150 F.3d at 1020; *see also Kim*, 8 F.4th at 1178 (listing "the experience and views of counsel" as a *Churchill* factor)..

In the Preliminary Approval Order, this Court concluded that Plaintiffs satisfied the adequacy requirement under Rule 23(a)(4), (Prelim. Order at 7), and appointed Dovel & Luner, LLP, as Class Counsel and Plaintiffs as representatives of the Class. (*Id.* at 7–9); *see Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-CV-2335-GPC-MDD, 2020 WL 520616, at *5 (S.D. Cal. Jan. 31, 2020) ("Because the Court found that adequacy under Rule 23(a)(4) has been satisfied above, due to the similarity, the adequacy factor under Rule 23(e)(2)(A) is also met."). Additionally, Class Counsel has "particular expertise and substantial experience" with "fake discount" class actions, like the one alleged in this case, that involve online retailers advertising purportedly time-limited discounts, when in fact, their products are always discounted. (ECF No. 54-1 ¶¶ 7–9); *see also* (Prelim. Order at 7); *see also Kim*, 8 F.4th at 1178. Accordingly, the Settlement Class is adequately represented, which weighs in favor of approval of the proposed settlement.

2. Rule 23(e)(2)(B): Arm's-Length Negotiation

The second Rule 23(e)(2) factor requires that the proposed settlement have been negotiated at "arm's length." Fed. R. Civ. P. 23(e)(2)(B). As this Court previously observed, the Settlement Agreement is the result of informed, arm's-length negotiations

that appear to have occurred over several months with an experienced mediator.[2] (Preliminary Approval Order at 10–11 (citing ECF No. 42-2 ¶¶ 9, 11)); Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment ("the involvement of a neutral or court-affiliated mediator or facilitator . . . may bear on whether [negotiations] were conducted in a manner that would protect and further the class interests"); *see also Hanlon*, 150 F.3d at 1027 (affirming approval of settlement after finding "no evidence to suggest that the settlement was negotiated in haste or in the absence of information illuminating the value of plaintiffs' claims"); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution . . . ."). This factor thus weighs in favor of approval of the proposed settlement.

### 3.    Rule 23(e)(2)(C): Adequacy of the Relief

The third Rule 23(e)(2) factor requires the court to consider: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any

---

[2] In its Preliminary Approval Order, the Court stated: "When the settlement is 'the product of an arms-length, non-collusive, negotiated resolution[,]' courts afford the parties the presumption that the settlement is fair and reasonable." (Prelim. Order at 10 (citing *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *Spann v. J.C. Penney Corp.*, 307 F.R.D. 508, 518 (C.D. Cal. 2015)). However, the Ninth Circuit has expressly held that "such a presumption of fairness is not supported by our precedent" for settlements occurring prior to class certification. *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019); *see also Saucillo v. Peck*, 25 F.4th 1118, 1131–32 (9th Cir. 2022) (reversing a district court's approval of a class action settlement when it "applied the same presumption that we reversed in *Roes*," and "[t]he district court never applied *Bluetooth* because it did not utilize the heightened standard for pre-class certification settlements," and, even though the district court "stated that the presumption was a 'factor,' our precedent is clear that district courts must apply a more searching review for a pre-class certification settlement."). Notwithstanding its prior statements in the Preliminary Approval Order, the Court's finding that the Settlement Agreement is fair is supported both by its analysis in the Preliminary Approval Order, which did apply the three factors of collusion reserved for pre-certification settlements, *see* (Prelim. Order at 13–14), and as set forth in this Order, which does not apply any presumptions.

proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C); *see also Kim*, 8 F.4th at 1178 (listing the *Churchill* factors). In this consideration, district courts in the Ninth Circuit must compare the settlement amount to what the parties estimate would be the maximum recovery in a successful litigation. *See Litty v. Merrill Lynch & Co.*, No. CV 14–0425 PA (PJWx), 2015 WL 4698475, at *9 (C.D. Cal. Apr. 27, 2015) (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000)).

### a)   Costs, Risks, and Delay of Trial and Appeal

When considering "the costs, risks, and delay of trial and appeal," Fed. R. Civ. P. 23(e)(2)(C)(i), courts in the Ninth Circuit evaluate "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial . . . ." *Hanlon*, 150 F.3d at 1026; *Kim*, 8 F.4th at 1179 (listing "the risk, expense, complexity, and likely duration of further litigation" as a *Churchill* factor). "[T]he Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Martinelli v. Johnson & Johnson*, No. 2:15-CV-01733-MCE-DB, 2022 WL 4123874, at *4 (E.D. Cal. Sept. 9, 2022).

Here, continued litigation would likely be costly and result in a substantial delay of whatever potential relief might be obtained in the absence of a settlement. *See id.* at *5 ("[P]rotracted litigation would likely come at considerable expense to both parties."). For example, while "Class Counsel remains confident in the strength of [Plaintiffs'] claims," Defendant also maintains the strength of its position and raised "several substantive arguments" that would make continued litigation "complex and risky." (Mot. at 18–19); *see also* (ECF No. 42 at 20). In particular, Defendant argues that Plaintiffs would be unable to prove damages on a class-wide basis, notwithstanding Class Counsel's "significant time" spent developing viable damages models. (Mot. at 19; ECF No. 42 at 20). Class Counsel also took into consideration similar "fake discount" cases that were disposed of at

various points of litigation.  (Mot. at 18–19 (citing cases)).  In reaching a settlement, Plaintiffs have ensured a favorable recovery for the class.  *See Rodriguez*, 563 F.3d at 964 (litigation risks weigh in favor of approving class settlement).  Accordingly, these factors also weigh in favor of approving the settlement.  *See Testone v. Barlean's Organic Oils, LLC*, No. 3:19-cv-00169-RBM-BGS, 2023 WL 2375246, at *3 (S.D. Cal. Mar. 6, 2023) (finding as a basis for approving the settlement that the "[p]laintiffs face significant risks if this case proceeded to trial, while the parties' settlement achieves a definite result").

*b)    Effectiveness of Proposed Method of Relief Distribution*

Rule 23(e) directs the court to consider the "effectiveness of any proposed method of distributing relief to the class[.]" Fed. R. Civ. P. 23(e)(2)(C)(ii).  "[T]he goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." *Musgrove*, 2022 WL 18231364, at *6 (quoting 4 Newberg on Class Actions, § 13:53 (5th ed.)).  Further, "[o]ften it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims." Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment.

Here, as outlined above, Class Members will receive their portion of the benefits in one of two ways.  If a class member chooses to file a claim, they will receive their settlement amount in cash (which is approximately equal to 12% of the total amount of qualifying purchases), and if a class member chooses not to file a claim, they will *automatically* receive the 12% of total qualifying purchases in the form of store credit that will not expire.  (Settlement Agreement § III(E)(1)-(4).).  The Settlement Administrator sent notice to Class Members after receiving a spreadsheet containing the class member's names, last known mailing address, email address, User ID, number of orders purchased, and total purchase amount.  (ECF No. 54-3 ¶ 5).  The Settlement Administrator also effected several checks to be sure that notice was actually received by Class Members, including by tracking invalid email addresses and/or undeliverable emails due to a "hard bounce" and mailing each of those Class Members the notice, and updating addresses for

the 75 Class Members whose notices were returned by USPS.  (*Id.* ¶¶ 7–12).  The Settlement Administrator also has a case-specific website and hotline for Class Members to utilize.  (*Id.* ¶¶ 13–17).

Because the proposed method of distributing relief to Class Members is based on each Member's personal records and requires no actions from Participating Class Members to receive their share, the method effectively distributes relief to Class Members and weights in favor of final approval.

### c)    *Proposed Award of Attorneys' Fees*

The Court must consider the "terms of any proposed award of attorney's fees, including timing of payment."  Fed. R. Civ. P. 23(e)(2)(C)(iii).  Here, Defendant has agreed to not dispute that Class Counsel is "entitled to receive up to $1,497,500 in attorneys' fees, costs, and expenses if approved by the Court," which is approximately 15% of the total settlement amount.  (Settlement Agreement § III(H)(1)).  As outlined above and discussed more thoroughly below, this amount is reasonable because it does not exceed the Ninth Circuit "benchmark" of acceptable attorneys' fees and does not evidence any signs of self interest by Class Counsel.  *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 953 (9th Cir.2015) (approving fee award of 25%); *Razo*, 2022 WL 4586229, at *10 ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark.").  This weighs in favor of final approval.

### d)    *Settlement Agreement with Lead Plaintiff*

The Court must also evaluate any agreement made in connection with the proposed Settlement Agreement.  *See* Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3).  The Settlement Agreement provides a $2,500 incentive award to each named Plaintiff as compensation for their work on behalf of the Class.  *See* (Mot. Fees at 11; Settlement Agreement § III(H)(2)).  The Court preliminarily held that the incentive award to the named Plaintiffs fell within the range of possible approval and appeared fair and reasonable.  (Prelim. Order at 13–14).  Though the Ninth Circuit has not set a benchmark, incentive awards in this Circuit typically

range from $2,000 to $10,000 with courts treating $5,000 payments as presumptively reasonable. *See, e.g., Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267–68 (N.D. Cal. 2015) (citing cases). Plaintiffs' requested $2,500 incentive awards fall within the low range of typical incentive awards. Therefore, this weighs in favor of final approval.

### 4. Rule 23(e)(2)(D): Equitable Treatment Among Class Members

The final Rule 23(e)(2) factor requires that the "proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D) advisory committee's note to 2018 amendment.

Here, the amount of relief given to each member of the Settlement Class will be determined using the same formula for each Class Member—12% of past purchases—but will result in different payments because the formula is based on how much Class Members spent on SelectBlinds.com during the Class Period. (Settlement Agreement § III(E)(1)). The Court agrees with Plaintiffs that this calculation treats the Class Members equitably because the formula "ties Class Members' recovery to their potential damages . . . ." (ECF No. 42 at 33); *see also Perks v. Activehours, Inc.*, No. 5:19-CV-05543-BLF, 2021 WL 1146038, at *6 (N.D. Cal. Mar. 25, 2021) ("[P]ro rata distribution is inherently equitable because it treats Class Members fairly based on the amount of each member's potential damages."). Furthermore, as outlined above and discussed more thoroughly below, the incentive awards for the named Plaintiffs are reasonable and "do not constitute inequitable treatment of class members." *Id.* (citing *Rodriguez*, 563 F.3d at 958–59). The Court finds that this factor weighs in favor of approval. *See* Fed. R. Civ. P. 23(e)(2)(D).

### 5. Remaining *Churchill* Factors

As discussed above through the Rule 23(e)(2) factors, the Court finds that the following *Churchill* factors weigh in favor of final approval: "the strength of the plaintiff's case;" "the risk, expense, complexity, and likely duration of further litigation;" "the risk of

-16-

maintaining class action status throughout the trial; and "the experience and views of counsel." *See In re Bluetooth*, 654 F.3d at 946. For the reasons that follow, the remaining *Churchill* factors, on balance, weigh in favor of final approval.

> a)   *Amount Offered in Settlement*

As the Ninth Circuit has stated, "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is [thus] not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625. Therefore, the fact that a proposed settlement may "only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998) (citation omitted).

Here, the $10 million settlement results in approximately $8.5 million in direct benefits to the Class Members, with the average award amounting to $75 in cash or store credit per Class Member, though the number will vary depending on the total value of their earlier purchases. (ECF No. 42-2 ¶ 14; Settlement Agreement § III(E)). As the Court discussed in the Preliminary Approval Order, the amount of the settlement, when considered against the hurdles to recovery posed by continued litigation, as well as the fact that Defendant's website offers many items that cost between $25 and $35, weighed in favor of preliminary approval. *See* (Prelim. Order at 12–13). Class Counsel also characterizes the relief provided as "excellent" because it provides an average amount "far more than consumers typically recover in similar cases," and because the Class Members receive relief automatically. (ECF No. 42 at 26); *see also Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 833 (N.D. Cal. 2017) (finding a $10 recover fair). Based on the ability for Class Members to easily recover their relief offered without having to necessarily "hand over more of their own money," and that the average award is within the range of individual awards in consumer class actions, this factor weighs in favor of final approval. *See, e.g.*, *Online DVD*, 779 F.3d at 951 (affirming a settlement resulting in $12 gift cards).

*b)     Stage of Proceedings and Extent of Discovery*

A court's consideration of the stage of the proceedings and extent of discovery essentially "evaluates whether 'the parties have sufficient information to make an informed decision about settlement.'" *Knapp*, 283 F. Supp. 3d at 833 (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)). Here, the parties began discussing early resolution of the case in December 2022, a few months after the complaint was filed. (ECF No. 42-2 ¶ 9). The parties also engaged in formal mediation with JAMS mediator, Bruce Friedman, on June 20, 2023. However, prior to the mediation, the parties exchanged "information crucial to early resolution of the case," including "substantive and thorough mediation briefs," and Defendant's "extensive financial and sales data" that permitted Class Counsel to "put together several detailed damages models. . . ." (*Id.* ¶¶ 9–10). Defendant also "hosted a pre-mediation presentation on its financials and sales data for the mediator" and Class Counsel. (*Id.* ¶ 10). After mediation, the parties had not reached a resolution and continued to negotiate for several weeks with the assistance of the mediator. (*Id.* ¶ 11).

The exchange of crucial sales documents and the presence of an experienced mediator lend support to the conclusion that the parties had sufficient information to make an informed decision about settlement. *See Knapp*, 283 F. Supp. at 833. Furthermore, as discussed above, the settlement appears to be the result of arm's length negotiations. However, because discovery was not extensive prior to mediation and there was no motion practice, this factor weighs only slightly in favor of final approval. *Cf. Martinelli*, 2022 WL 4123874, at *7 ("[A]fter seven years of litigation and extensive discovery, the parties have gained a clear view of the strengths and weaknesses of their cases, thus enabling them to engage in meaningful settlement negotiations.").

*c)     Presence of a Governmental Participant*

1    The parties have not asserted that any governmental entity participated in the

2    Settlement.   However, the Settlement Administrator served notice of the proposed

3    Settlement to state and federal officials, as required by CAFA.  *See* (ECF No. 54-3 ¶ 4).

4    There have been no objections from the governmental officials served in response to the

5    notice.  *See* (Mot. at 16).  Therefore, this factor weighs slightly in favor of final approval.

6    *See In Re Nucoa Real Margarine Litig.*, No. CV 10-00927 MMM (AJWx), 2012 WL

7    12854896, at *14 (C.D. Cal. June 12, 2012) (finding this factor weighed in favor of final

8    approval when non-participant governmental officials "were notified of the terms of the

9    settlement, . . . and none indicated an intention to object").

10                     *d)      Class Member's Reactions*

11    Among the *Churchill* factors for district courts to consider is the reaction of the class

12    to the settlement.  *See In re Bluetooth.*, 654 F.3d at 946.  District courts find "that the

13    absence of a large number of objections to a proposed class action settlement raises a strong

14    presumption that the terms of a proposed class settlement action are favorable to the class

15    members."  *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1257 (C.D. Cal. 2016).

16    Here, direct notice was successful for "approximately 99.9% of the Class."  (Mot. at 14;

17    ECF No. 54-3 ¶¶ 10–12).  According to the Settlement Administrator, after receiving

18    notice, 8,440 Class Members have filed a claim to elect receiving their settlement amount

19    in cash, amounting to a cash claim rate of approximately 7.5% (as of January 4, 2024).

20    (ECF No. 54-1 ¶ 21).  Class Counsel represents that the "preliminary response to the notice

21    program shows that [the program] was robust and effective."  (*Id.*).  Furthermore, there

22    have been no objections or exclusions filed as of January 4, 2024.  *See* (*id.* ¶¶ 19–20).

23    The Court finds that the absence of objections and the claim rate weigh in favor of

24    final approval.  *See Online DVD*, 779 F.3d at 941 (upholding settlement in which the parties

25    sent direct notice to 35,000,000 class members and received 1,183,444 claims, which

26    represents a 3.4% claim rate); *Briseno*, 844 F.3d at 1130 ("It is not unusual for only 10 or

27    15% of the class members to bother filing claims." (quoting Christopher R. Leslie, The

28    Significance of Silence: Collective Action Problems and Class Action Settlements, 59 Fla.

L. Rev. 71, 119 (2007)); *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 468 n.134 (C.D. Cal. 2014) (3% claim filing rate reasonable).

### 6. Sufficiency of Notice

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all Settlement Class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Although Rule 23 requires that reasonable efforts be made to reach all Settlement Class members, it does not require that each Settlement Class member actually receive notice. *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (noting that the standard for class notice is "best practicable" notice, not "actually received" notice).

The notice plan previously approved has been implemented. (ECF No. 54-1 ¶¶ 20–21; Prelim. Order at 14–15). The notice plan provided: (1) Defendant would provide a Class List including all Class Members and their emails and addresses, to the Settlement Administrator, (Settlement Agreement § III(C)); (2) all Class Members would be sent emails with notice, or, if email failed, a notice in the mail, that provided information about the nature of the claims in the suit, the Settlement, and the Settlement Class Members' options, including the choice to either receive the settlement amount in store credit or file a claim to receive it in cash, (*id.* § IV(A–B)); (3) the notices would also inform Class Members of their right to opt out or object to the Settlement, (*id.*); (4) the notices would direct Class Members that they can obtain further information at a Settlement Website or via a hotline, both of which would be set up by the Court-appointed Settlement Administrator, Angeion Group, (*id.* § IV(C–D)). As outlined above, Class Counsel represents that notice was successful for approximately 99.9% of the Class. *See* (Mot. at 14; ECF No. 54-3 ¶¶ 10–12). Accordingly, because the notice plan is consistent with the plan the Court previously approved and because Class Counsel has submitted evidence that Class Members have actually received and understood the notice, the Court finds that notice is satisfied under Rule 23(c)(2)(B) and Rule 23(e)(1).

1  **V.    INCENTIVE AWARDS AND ATTORNEYS' FEES AND COSTS**

2      **A.    Incentive Awards**

3      "[N]amed plaintiffs, as opposed to designated class members who are not named

4  plaintiffs, are eligible for reasonable incentive payments." *Staton v. Boeing Co.*, 327 F.3d

5  938, 977 (9th Cir. 2003). "Courts have discretion to issue incentive awards to class

6  representatives." *Ochinero v. Ladera Lending, Inc.*, Case No. SACV 19-1136 JVS

7  (ADSx), 2021 WL 4460334, at *9 (C.D. Cal. July 19, 2021) (citing *Rodriguez*, 563 F.3d at

8  958–59). Incentive or service awards intend to compensate class representatives for "work

9  done on behalf of the class, to make up for financial or reputational risk undertaken in

10  bringing the action, and, sometimes, to recognize their willingness to act as a private

11  attorney general." *Rodriguez*, 563 F.3d at 958–59. District courts evaluate these awards

12  relative to the plaintiff's efforts, considering the financial or reputation risk involved, any

13  personal difficulties encountered by the plaintiff, the amount of time spent, the duration of

14  the litigation, and any personal benefit (or lack thereof) enjoyed by the plaintiff. *See In re*

15  *Apple Inc. Device Performance Litig.*, 50 F.4th 769, 786 (9th Cir. 2022); *Knapp*, 283 F.

16  Supp. 3d at 838 (approving a $5,000 incentive award in a false advertising case that

17  involved deceptive discounts on a retail website). District courts also consider the

18  "proportionality between the incentive payment and the range of class members' settlement

19  awards." *See Smith v. Am. Greetings Corp.*, No. 14-CV-02577-JST, 2016 WL 362395, at

20  *10 (N.D. Cal. Jan. 29, 2016).

21      Here, Plaintiffs each request a $2,500 incentive payment, which together amount to

22  0.05% of the total settlement value. (Mot. Fees at 35). Plaintiffs represent that they both

23  took an "active role" in the litigation and "diligently consulted" with Class Counsel,

24  including by: consulting about their own experiences with Defendant to help draft the FAC,

25  reviewing documents prior to filing, gathering documents requested by Defendant,

26  consulting with Class Counsel before mediation, making themselves available by

27  telephone on the day of mediation, and reviewing and agreeing to the terms of the

28

Settlement Agreement.  (ECF No. 42-3 ¶ 8; ECF No. 42-4 ¶ 8).  Plaintiffs do not represent how many hours they spent accomplishing these tasks.

The Court finds the requested incentive awards to be reasonable and proportional to the effort expended by Plaintiffs in this Action.  Though the Ninth Circuit has not set a benchmark for the amount of incentive awards, awards ranging from $2,000 and $10,000 have found to be reasonable, with many district courts treating $5,000 as "presumptively reasonable."  *See, e.g.*, *Jacobo v. Ross Stores, Inc.*, No. CV 15-4701-MWF (AGRx), 2019 WL 13245093, at *7 (C.D. Cal. Aug. 6, 2019) (approving a $5,000 incentive award for a $4.854 million class action settlement in a deceptive pricing suit); *Knapp*, 283 F. Supp. 3d at 839 (same); *Hale v. Manna Pro Prod., LLC*, No. 2:18-CV-00209-KJM-DB, 2021 WL 4993036, at *8 (E.D. Cal. Oct. 27, 2021) (approving a $7,500 incentive award in a false advertising class action); *Hopson v. Hanesbrands Inc*., No. CV-08-0844 EDL, 2009 WL 928133, at *27–28 (N.D. Cal. Apr. 3, 2009) (awarding $5,000 incentive payment, constituting 1.25% of the settlement fund, and finding that, "in general, courts have found that $5,000 incentive payments are reasonable").  Here, the incentive awards are on the low end of the range of awards approved by courts in this district and represent a very small fraction of the total settlement value.  The Court therefore approves the incentive awards for each Plaintiff.

**B.    Attorneys' Fees**

Awards of attorneys' fees in class action cases are governed by Federal Rule of Civil Procedure 23(h), which provides that, after a class has been certified, the court may award reasonable attorneys' fees and nontaxable costs.  Attorney's fees and costs "may be awarded in a certified class action where so authorized by law or the parties' agreement . . . ."  *In re Bluetooth*, 654 F.3d at 941.  In the Ninth Circuit, there are two primary methods to calculate attorney's fees: the percentage-of-recovery method and the lodestar method. *Online DVD*, 779 F.3d at 949 (citation omitted).  Under the percentage-of-recovery method, the attorneys' fees equal some percentage of the common settlement fund; in this circuit, the benchmark percentage is 25%."  *Id*.  By contrast, the lodestar method requires

"multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Id.* (citation omitted).  Selection of the benchmark or any other rate must be supported by findings that "take into account all the circumstances of the case." *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002).

Here, the Settlement Agreement allows Plaintiffs' counsel to seek an award of attorneys' fees and costs up to approximately 15% of the Settlement's total value.  In its Motion, Class Counsel actually seeks $1,416,790 in attorneys' fees and $11,719 in costs, amounting to about 14% of the total benefit. (Mot. Fees at 11).  Class Counsel's request is well below the 25% benchmark set by the Ninth Circuit.  *See Online DVD*, 779 F.3d at 949; *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) ("We have . . . established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach.").  Furthermore, as stated in the Preliminary Approval Order, *see* (Prelim. Order at 12), the settlement relief is not merely providing "coupons" to Class Members,[3] and the additional requirements imposed by CAFA on

---

[3] "CAFA requires courts (1) to apply 'heightened scrutiny' to settlements that award 'coupons' to class members, and (2) to base fee awards on the redemption value of the coupons, rather than on their face value." *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 602 (9th Cir. 2021) (quoting *In re EasySaver Rewards Litig.*, 906 F.3d 747, 754–55 (9th Cir. 2018)); *see also* 28 U.S.C. § 1712.  The Ninth Circuit has held that Congress intended the CAFA restrictions to apply to settlements that "involve a discount—frequently a small one—on class members' purchases from the settling defendant." *Online DVD*, 779 F.3d at 950.  In so holding, the Ninth Circuit has set forth three factors to consider whether relief should be considered a coupon: "(1) whether class members have 'to hand over more of their own money before they can take advantage of' a credit, (2) whether the credit is valid only 'for select products or services,' and (3) how much flexibility the credit provides, including whether it expires or is freely transferrable." *McKinney-Drobnis*, 16 F.4th at 602–03 (citing cases).  Here, the Settlement Agreement  allows Class Members to redeem their settlement relief in cash if desired, and even if the relief is provided in store credit, the credit is available for any sort of purchase, does not expire, and, because Defendant's website provides several products listed at prices below the average award amount, does

coupon settlements do not apply here; therefore, Class Counsel's use of one of the two methods accepted by the Ninth Circuit is appropriate.

The Ninth Circuit has identified a number of factors that may be relevant in determining if the award is reasonable: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel; and (6) the awards made in similar cases. *Vizcaino*, 290 F.3d at 1048–50. District courts also have the discretion to perform a "cross-check" on counsel's calculation of fees using the opposing method: here, for instance, using the lodestar method to cross check Class Counsel's request for an award using the percentage method. *See Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x 628, 630 (9th Cir. 2020) ("This Court has consistently refused to adopt a crosscheck requirement, and we do so once more." (citing cases)).

Each of these factors weighs in favor of the reasonableness of the attorneys' fee request. As outlined above, the $10 million settlement is a significant achievement and provides immediate relief to Class Members instead of having to await uncertain litigation. As Class Counsel has represented, "fake discount" cases, similar to the allegations in this case, have been dismissed at "every stage of litigation." (Mot. at 18 (citing cases)); *see also Farrell*, 827 F. App'x at 630 (finding fees reasonable based in part on finding that that litigation was risky because "no court has ever ruled for bank accountholders on the controlling legal issue"). Despite this legal landscape, Class Counsel took on this litigation on a contingency fee basis, taking on the risk that they may not receive any compensation for their work and the hold-over financial risk of not getting paid until resolution. (ECF

---

not require Class Members to "hand over more of their own money before they can take advantage of a credit." *See Online DVD*, 779 F.3d at 951; (Prelim. Order at 12). Furthermore, the type of store credit provided as relief here is directly analogous to the store credit that the Ninth Circuit explicitly held was not a coupon in *Online DVD*. 779 F.3d at 950 (affirming a $12 store credit to Walmart was not a coupon under CAFA in part because "the settlement gives class members $12 to spend on any item carried on the website of a giant, low-cost retailer" "[i]nstead of merely offering class members the chance to receive a percentage discount on a purchase of a specific item").

No. 53-1 ¶ 26); *see Russell v. Kohl's Dep't Stores, Inc.*, No. 5:15-CV-01143-RGK-SP, 2019 WL 13109706, at *2 (C.D. Cal. Feb. 22, 2019) (finding fees reasonable when "counsel achieved an enormous settlement for the class after high-risk contingency litigation that could have resulted in no recovery," and, in a "nearly-identical class action filed . . . the same defendant, the Ninth Circuit affirmed . . . summary judgment for [the defendants] for alleged advertising misrepresentations" and because plaintiffs "still request below the benchmark percentage"). Class Counsel also has specific expertise in litigating "fake discounts," which "go[] relatively unchecked in the e-commerce space." (ECF No. 53-1 ¶¶ 7–9). Class Counsel also explains, in depth and with particularity, the firm's approach to such litigation, (*id.*), and the efforts undertaken in this case, (*id.*¶¶ 14–19). Finally, the fees sought in this case are similar to awards in similar cases. *See Jacobo¸* 2019 WL 13245093, at *5 (approving fees "in the amount of $1,213,500, or 25% of the $4,854,000 settlement fund" in a false advertising case focused on misleading pricing at a department store); *Noll v. eBay, Inc.*, 309 F.R.D. 593, 609 (N.D. Cal. 2015) (approving a $1.6 million fees award, 25% of the settlement, in a false advertising case); *Spann*, 211 F. Supp. at 1261–62 (approving fees in the amount of $13.5 million, or 27% of the settlement, in a fake discounting class action when the action had been heavily litigated, including dispositive motion practice); *Russell*, 2019 WL 13109706, at *2–3 (approving a 23.8% fees award, in the amount of $1,462,500, in a price-comparison advertising policy class action).[4]

Furthermore, as also outlined above, there is no evidence of collusion to Class Counsel's benefit. Therefore, the Court finds that the requested fees are reasonable and grants Plaintiffs' request as to the requested attorneys' fees.[5]

---

[4] The Court also notes that while Defendant reserved the right to dispute the amount of attorneys' fees sought, it has not opposed this request.

[5] Given the *Vizcaino* factors analysis, the Court exercises its discretion to decline a lodestar cross check for a fees award requesting only 14% of the total settlement value. *See Farrell*, 827 F. App'x at 630 (finding no abuse of discretion in "using the percentage-of-recovery method to calculate fees and refusing to conduct a lodestar crosscheck" when district court

## C.    Costs and Expenses

In class action settlements, "[a]ttorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters."  *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2008) (citing *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir.1994)).  "There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund."  *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *23 (C.D. Cal. June 10, 2005) (citation omitted).

Class Counsel has submitted an itemized list of costs amounting to $11,719.12. (ECF No. 53-1 ¶ 35; ECF No. 53-5).  These costs include travel costs associated with mediation, postage, cost for the mediator and court reporters, and copying expenses.  (ECF No. 53-5 at 2).  These costs appear reasonable and typical of other similar actions.  *See, e.g.*, *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014) (approving costs, including mediator, court fees, depositions in a wage and hour class action); *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 454 (E.D. Cal. 2013) (noting that frequently

---

considered the reasonableness factors).  The Court agrees with Plaintiffs, and various other courts, that performing such cross check, in these circumstances, could discourage early resolution of cases.  *See Vizcaino,* 290 F.3d at 1050 n.5 ("We do not mean to imply that class counsel should necessarily receive a lesser fee for settling a case quickly; in many instances, it may be a relevant circumstance that counsel achieved a timely result for class members in need of immediate relief . . . it is widely recognized that the lodestar method *creates incentives for counsel to expend more hours than may be necessary* on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early settlement." (emphasis added)); *Glass v. UBS Fin. Servs.*, No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8476, at *49 (N.D. Cal. Jan. 26, 2007) ("Under the circumstances presented here, where the early settlement resulted in a significant benefit to the class, the Court finds no need to conduct a lodestar cross-check."); *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, No. 4:14-MD-2541-CW, 2017 WL 6040065, at *10 n.63 (N.D. Cal. Dec. 6, 2017) ("[Counsel] may do unnecessary work or delay settlement to make sure that the multiplier needed to get to their percentage fee does not appear to be out of line."), *aff'd*, 768 F. App'x 651 (9th Cir. 2019).

reimbursed costs include items like mail charges and mediation fees).  Thus, the Court GRANTS Class Counsel's request for costs.

## VI.    CONCLUSION

For the foregoing reasons, the Court:

1. **GRANTS** Plaintiffs' Unopposed Motion for Final Approval and approves settlement of the action between Plaintiffs and Defendant, as set forth in the Settlement Agreement, as fair, just, reasonable, and adequate and directs the Parties to perform their settlement in accordance with the terms set forth in the Settlement Agreement;

2. **GRANTS** an award to Class Counsel for $1,416,790 in attorneys' fees and $11,719.12 in costs to be paid to Class Counsel;

3. **GRANTS** an award to Plaintiffs Elisa Montes de Oca and Gabriella Fernandez in the amount of $2,500, each, in exchange for a general release of their individual claims and finds that this amount is warranted and reasonable; and

4. **DISMISSES** Plaintiffs' case with prejudice, in accordance with the terms of the Settlement Agreement.

**IT IS SO ORDERED.**

DATED:  March 4, 2024

_____
HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE